Following an automobile accident, Canal Indemnity Company sued its insured, Mike Burns, individually and d/b/a First Class Auto Sales; and Roy Burns, for a judgment declaring its obligations under the uninsured motorist provisions of a garage liability policy issued to First Class Auto Sales ("First Class"). The trial court entered a judgment declaring that Canal owed Roy Burns uninsured motorist coverage in an amount not to exceed $60,000.[1]
Mike Burns owns and operates First Class, which is in the business of buying salvaged cars and repairing them for resale. Roy Burns is the father of Mike Burns. Roy Burns works for First Class, running errands and picking up parts used in the repair of the cars. In performing his duties, he drives cars being held for resale on the First Class lot.
Roy Burns was involved in an accident while driving one of the used cars from the *Page 400 
First Class lot. He was hit head-on by a motor vehicle driven by an uninsured motorist, and he suffered injuries resulting from the collision.
Roy Burns and Mike Burns state that, at the time of the accident, Roy had gone to look for used parts at the direction of Mike Burns; that Roy was to go to a salvage yard and purchase parts to be used in the repair of the car he was driving; that Roy went to the salvage yard and then on the way back stopped by the house of a friend (who was not at home); and that after leaving the friend's house he was hit by the uninsured motorist. At the time of the accident, Mike Burns had three vehicles for sale on the First Class lot.
Roy Burns had his own uninsured motorist coverage with Allstate Insurance Company, with policy limits of $20,000 per person and $40,000 per accident. He had insured two personal vehicles under this one contract. After correspondence between Canal's adjuster and Allstate, the insurers agreed that Allstate would be the primary carrier and that Canal would be the excess carrier. Roy burns made a claim on his Allstate contract, and Allstate tendered the policy limits of $40,000.
First Class's policy with Canal provided uninsured motorist coverage of $20,000 per person and $40,000 per accident. The Canal policy covered all three vehicles on the lot. After settling the Allstate claim, Roy filed a claim under the Canal policy for uninsured motorist benefits. Roy claimed that his injuries entitled him to damages exceeding the amount tendered by Allstate; he claimed benefits up to the amount of his total damages by stacking the three coverages under the Canal contract.
 ISSUES
(1) Was Roy Burns a named insured under the terms of the garage liability policy issued by Canal to First Class? Is Roy Burns entitled to stack the coverages under the Canal policy?
(2) Does the "Limits of Liability" clause in the Canal policy limit Canal's exposure under the uninsured motorist provisions? Does the "other insurance" provision of the Canal policy endorsement limit Canal's liability?
 Policy Terms/Stacking
This is an insurance stacking case. In Sullivan v. State FarmMutual Automobile Insurance Co., 513 So.2d 992 (Ala. 1987), this Court, citing State Farm Automobile Insurance Co. v. Reaves,292 Ala. 218, 292 So.2d 95 (1974), held that the classification of "insured" under uninsured motorist vehicle coverage must be as broad as the definition of "insured" under the bodily injury liability coverage (primary liability). Also, in Lambert v.Liberty Mutual Insurance Co., 331 So.2d 260 (Ala. 1976), Justice Jones wrote in his special concurrence:
 "If Lambert is an insured — named or otherwise — under the primary liability provisions, the statute mandates coverage for uninsured motorist protection to the same extent and in the same manner as all other insureds under the basic liability coverage."
331 So.2d at 266. Section IV of the Canal policy, "Persons Insured," which is part of the primary liability provisions, states that "[e]ach of the following is an insured under this insurance to the extent set forth below:
 "A. Under the Garage Bodily Injury and Property Damage Liability Coverages:
"(1). The named insured.
 "(2). With respect to garage operations other than the automobile hazard:
 "(a). Any employee, director, or stockholder of the named insured while acting within the scope of his duties as such."
The "uninsured motorist coverage" provision of the policy issued by Canal to First Class provided as follows:
 "Each of the following is an insured under this insurance to the extent set forth below:
"(a). . . .
 "(b) Any other person while occupying an insured highway vehicle. . . ."
It is undisputed that at the time of the accident Roy Burns was an employee of Mike Burns d/b/a First Class Auto Sales. Pursuant to the holdings of this Court in Reaves *Page 401 
and Lambert and the Canal primary liability provisions, Roy Burns as an employee must be extended uninsured motorist coverage under the Canal policy. As an employee, Roy Burns is designated as an "insured" under the liability provisions of the Canal policy. Contrary to what Canal argues, whether Roy Burns owned the vehicle he was driving or paid any of the premiums for the insurance is of no consequence. See, White v.Georgia Casualty Surety Insurance Co., 520 So.2d 140
(Ala. 1987).
In White, Mr. White was injured while driving his employer's truck in the line and scope of his duties. The Court held that White, as an employee and as an insured in the primary liability portion of his employer's fleet insurance policy was entitled to stack coverage under the uninsured motorist provisions. Mike Burns and Roy Burns testified that Roy was "on the business" of First Class when the accident occurred. Roy was returning from searching for auto parts to be used in repairing cars for resale at First Class. Applying the rationale of White, supra, we agree with the trial court that Roy Burns can stack the Canal uninsured motorist coverage because the evidence supports a finding that he is within the definition of an "insured" under the terms of the Canal uninsured motorist coverage provisions.
It is well settled that where the insured's loss exceeds the limits of one uninsured motorist policy, the insured may stack the coverages provided by other uninsured motorist policies to cover up to the amount of damages required to compensate for the actual injury sustained. State Farm Mutual AutomobileInsurance Co. v. Fox, 541 So.2d 1070 (Ala. 1989). Ala. Code 1975, § 32-7-23(c), states:
 "The recovery by an injured person under the uninsured provisions of any one contract of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract."
Roy Burns asserts that the $40,000 tendered under the Allstate contract will not cover the amount of damages he would be entitled to as compensation for actual harm sustained and, therefore, he seeks to recover under the Canal uninsured motorist provision.
The statute limits stacking to the primary coverage plus coverage for two additional vehicles. In Fox, supra, this Court held:
 "The phrases 'any one contract' and 'within such contract' refer to a single insurance contract. There may be no significant difference between five single vehicle insurance policies and one insurance policy covering five vehicles, as State Farm contends. However, the legislature clearly directed its limitation of stacking of uninsured/underinsured motorist coverage to a single policy covering multiple vehicles. . . . The plain meaning of § 32-7-23(c) is that an injured person covered under a multi-vehicle policy may stack the uninsured/underinsured motorist coverage for additional vehicles covered within the policy, limited to 'the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages.' "
541 So.2d at 1072. When statutory language is unequivocal and unambiguous, it is to be given its plain, clear, and ordinary meaning. Mann v. City of Tallassee, 510 So.2d 222 (Ala. 1987). The statute does not prevent stacking under two or more separate contracts of insurance. The statutory language clearly imposes a "limitation" only on the number of uninsured motorist coverages that can be stacked within one contract of insurance.Fox and § 32-7-23(c) do not prohibit the stacking of uninsured motorist coverages provided under separate multi-vehicle contracts; they only limit stacking to a total of three coverages under each separate contract of insurance. The language of § 32-7-23(c) cannot be interpreted to allow stacking only under one multi-vehicle insurance contract.
In American Economy Insurance Co. v. Thompson, 643 So.2d 1350
(Ala. 1994), American Economy insured for Thompson's employer two vehicles under one contract and three vehicles under a separate contract. Thompson was involved in an accident with an uninsured motorist while driving a vehicle owned by his employer in the line and scope of his duties. American Economy tendered to Thompson the policy limits under the contract *Page 402 
covering two vehicles; we held that, pursuant § 32-7-23(c), Thompson was entitled to stack the coverages under the separate contract covering three vehicles. Furthermore, this Court has held that exceptions to insurance coverage must be narrowly construed so as to provide the maximum coverage available.Cotton States Mutual Insurance Co. v. Michalic, 443 So.2d 927
(Ala. 1983).
 Limits of Liability
Canal asserts that by virtue of the "other insurance" endorsement and the "limits of liability" clause, Roy Burns is not entitled to recover under the Canal policy. In the alternative, Canal argues that, at most, he can recover $20,000, the difference between what he received from Allstate ($40,000) and the maximum $60,000 allowed under the statute. The "limits of liability" clause states:
 "(a) The limit of liability stated in the schedule as applicable to 'each person' is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting 'each person', the limit of liability stated in the schedule as applicable to 'each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident."
The "other insurance" endorsement states:
 "(2) If there is other valid and collectible insurance available to the garage customer, whether primary, excess, or contingent and the limits of such insurance are insufficient to pay damages up to the applicable limit of the aforesaid responsibility law, then this insurance shall apply to the excess damages up to such limit."
This Court has consistently held that these "other insurance" and "limits of liability" clauses are ineffective to prevent stacking of coverages and are in derogation of well-settled Alabama law. General Mutual Insurance Co. v. Gilmore, 294 Ala. 546, 319 So.2d 675 (1975).
In light of the case law and our interpretation of §32-7-23(c), discussed above, we affirm the trial court's holding that Canal owes uninsured motorist benefits to Roy Burns in an amount up to $60,000, but not exceeding the amount required to compensate for injury sustained.
AFFIRMED.
SHORES and COOK, JJ., concur.
HOOPER, C.J., and MADDOX, J., concur in the result.
[1] The Canal insurance contract provides uninsured motorist coverage of $20,000. Three vehicles were covered under the Canal contract at the time of the accident. The $60,000 figure is derived by multiplying $20,000 x 3 vehicles; see Ala. Code 1975, § 32-7-23(c).