952 So.2d 330 (2006)
Mike DAVIS et al.
v.
HANSON AGGREGATES SOUTHEAST, INC., et al.
Hanson Aggregates Southeast, Inc.
v.
City of Opelika et al.
Oldcastle Materials Southeast, Inc.
v.
City of Opelika et al.
1040857, 1040940 and 1040945.
Supreme Court of Alabama.
June 9, 2006.
Rehearing Denied August 18, 2006.
*332 Charles E. Vercelli, Jr., of Vercelli & Associates, P.C., Montgomery; and James B. Sprayberry, Auburn, for Mike Davis et al.
Guy F. Gunter III of Melton, Gunter & Melton, Opelika, for City of Opelika and City of Opelika Utilities Board.
Stanley A. Martin, Opelika, for Lee County.
James A. Byram, Jr., and Paul A. Clark of Balch & and Bingham, LLP, Montgomery; and H. Wayne Phears of Phears & Moldovan, Norcross, Georgia, for Hanson Aggregates Southeast, Inc.
Phillip E. Adams, Jr., and Patrick C. Davidson of Adams, Umbach, Davidson & White, LLP, Opelika, for Oldcastle Materials Southeast, Inc.
W.F. Horsley and Joshua J. Jackson of Samford & Denson, LLP, Opelika, for the Young and Gilmer defendants.
NABERS, Chief Justice.
These three appeals are from two judgmentsone entered on a jury verdict, the other a summary judgment. In case no. 1040857, we affirm in part, reverse in part, and remand. In cases no. 1040940 and no. 1040945, the cross-appeals from the judgment *333 entered on the jury verdict, we affirm.

I. Facts and Procedural History
Hanson Aggregates Southeast, Inc. ("Hanson"), operated, and Oldcastle Materials Southeast, Inc. ("Oldcastle"), now operates, a quarry in Lee County.[1] The plaintiffs include approximately 70 residents of Lee County, as well as the City of Opelika ("the City"), the City of Opelika Utilities Board ("the Utilities Board"), and the Beauregard Water Authority. In addition to Hanson and Oldcastle, the defendants at trial included members of the Gilmer and Young families, who owned the land on which the quarry is located. The Gilmer and Young defendants have since been dismissed from the action, and the plaintiffs do not challenge the dismissal.
The quarry allegedly damaged the plaintiffs and their property by emitting noise, dust, vibration, and pollution; dewatering the subsoil; and causing sinkholes to form in the area. The plaintiffs sued on theories of public and private nuisance, trespass, negligence, and wantonness. They also sought a permanent injunction to prevent the defendants from continuing to operate the quarry.
Because of the number of plaintiffs and the complexity of the case, the parties and the trial court sought to break the action into separate trials pursuant to Rule 42(b), Ala. R. Civ. P. The two sides submitted competing trial plans, each of which recommended separating the plaintiffs into groups and holding a separate trial for each group.
The first group of plaintiffs tried their claims to a jury in August and September 2004. This group included the City, the Utilities Board, and 18 individual plaintiffs (collectively "the trial plaintiffs"). In relevant part, the jury found that 1) the quarry was not a nuisance; 2) Hanson and Oldcastle had operated the quarry negligently; and 3) Oldcastle had committed a trespass. The jury returned a verdict awarding damages to 5 of the 18 individual plaintiffs. The jury also returned a verdict stating that the City and the Utilities Board had met their burden of proof with respect to both Hanson and Oldcastle, but awarding those plaintiffs no damages. Finally, the trial court concluded that the verdict for the defense on the nuisance claim precluded it from considering the plaintiffs' request for an injunction.
Hanson and Oldcastle then moved for a judgment as a matter of law or for a remittitur of the damages award; the plaintiffs moved for a new trial or an additur. On February 1, 2005, the trial court denied both motions and entered a judgment on the jury's verdict.
The second trial was scheduled for April 2005. Before that trial took place, however, Hanson and Oldcastle moved for a summary judgment. They argued that because the jury in the first trial found that the quarry was not a nuisance, the nuisance claims of the remaining plaintiffs and injunctive relief as to the remaining plaintiffs were barred by the doctrines of res judicata and collateral estoppel.
The trial court agreed. On March 7, 2005, it entered a partial summary judgment for Hanson and Oldcastle:
"The claims of the remaining plaintiffs that the quarry is a public nuisance due to noise, dust, blasting, and/or dewatering, based on quarry operations up to and including the August 2004 trial of this case, are barred. The claims of the *334 remaining plaintiffs for injunctive relief, based on quarry operations up to and including the August 2004 trial of this case, are barred. The claims of the remaining plaintiffs, to recover money damages for specific injury to their person or property based on quarry operations are not barred."
(Emphasis in original.) The trial court certified both the judgment entered on the jury's verdict in the first trial and the summary judgment as final under Rule 54(b), Ala. R. Civ. P. The plaintiffs appealed, and Hanson and Oldcastle cross-appealed.[2]

II. Analysis
On appeal, the plaintiffs challenge both the jury verdict and the summary judgment. First, the trial plaintiffs argue that part of the jury's verdict was contrary to the evidence; we afford that verdict the typical presumption of correctness. SouthTrust Bank v. Donely, 925 So.2d 934, 943 (Ala.2005). The second issuethe trial court's decision to exclude certain evidencewe review only to determine if in excluding the evidence the trial court exceeded its discretion. Bowers v. Wal-Mart Stores, Inc., 827 So.2d 63, 71 (Ala.2001). The remaining issues are questions of law, which we review de novo. E.g., Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).
A. Issues Arising from the First Trial

1. Verdict against the individual plaintiffs
The jury found that Hanson and Oldcastle were not liable to any of the individual plaintiffs except the members of the Parker family and the Schwieker family, comprising 5 individuals. The remaining 13 individual plaintiffs argue that these findings were inconsistent and contrary to the great weight of the evidence.
This Court will not disturb a jury's verdict unless "the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's verdict was wrong and unjust." Campbell v. Burns, 512 So.2d 1341, 1343 (Ala.1987). Moreover, "`denial of a motion for a new trial strengthens the presumption of correctness afforded to a jury verdict.'" Keibler-Thompson Corp. v. Steading, 907 So.2d 435, 440 (Ala.2005)(quoting Bowers, 827 So.2d at 73).
The plaintiffs have failed to show that the jury's verdict as to these remaining 13 plaintiffs should be set aside. A reasonable jury could have concluded from the evidence that the Parkers and the Schwiekers were damaged by Hanson and Oldcastle's actions, but that the other 13 individual plaintiffs were not.[3] The verdict *335 as to these remaining 13 plaintiffs was not plainly wrong or unjust, and it must stand.

2. Verdict in favor of the City and the Utilities Board on the negligence claim
With respect to the City and the Utilities Board, the jury found Hanson and Oldcastle liable for negligence but awarded no damages. The City and the Utilities Board argue that this verdict is inconsistent and requires a new trial. We agree.
Damages are an essential element of the tort of negligence. "`"[P]roof of damage [is] an essential part of the plaintiff's case."'" Ex parte Stonebrook Dev., L.L.C., 854 So.2d 584, 589 (Ala.2003)(quoting Matthews Bros. Constr. Co. v. Stonebrook Dev., L.L.C., 854 So.2d 573, 578 (Ala. Civ.App.2001), quoting in turn William C. Prosser, Handbook of the Law of Torts § 30 (4th ed.1971)). As a result, a finding that a defendant is liable to a plaintiff for negligence is inconsistent with an award of no damages.
"The jury's finding for each of the Plaintiffs, which is clear and unequivocal, necessarily embraced all of the elements of the tort claim, including the element of injury and resultant damages. To so find, and then award no damages, is inconsistent on its face as a matter of law.
". . . .
"[This] compels a decision that the trial court should have afforded Appellants a new trial on the basis of the inadequacy of the award, or, as we see it, the inconsistency of the award of no damages, when such award is juxtaposed with the jury's finding of Defendants' liability."
Stinson v. Acme Propane Gas Co., 391 So.2d 659, 661 (Ala.1980); accord Thompson v. Cooper, 551 So.2d 1030, 1030 (Ala. 1989); Moore v. Clark, 548 So.2d 1352 (Ala.1989); and Clements v. Lanley Heat Processing Equip., 548 So.2d 1345 (Ala. 1989).
Hanson and Oldcastle do not concede that the verdict for the City and the Utilities Board was inconsistent. However, they fail to present any substantial argument that this Court should not apply the Alabama rule on inconsistent verdicts in this case. Instead, in their argument they assume an inconsistent verdict but maintain that the inconsistency does not require reversal. The focus of Hanson and Oldcastle's argument that the verdict does not require a reversal is that the City and the Utilities Board either 1) invited the error of an inconsistent verdict, 2) consented to the inconsistent verdict, or 3) waived their right to challenge the verdict.
Immediately following the verdict, the trial court noted the possibility that the verdict was inconsistent. The parties and the court then discussed how the verdict could be corrected. This began with the following exchange:
"Trial court: On the two verdict forms to the City of Opelika and the Utilit[ies] Board where they found in favor of the Plaintiff and awarded zero [damages], I would consider that an award of nominal damages. Do you want any clarification form the jury on that point?

"Mr. Vercelli [counsel for the City and the Utilities Board]: I think it's inconsistent to award nothing and find them liable. I think nominal damages should have been awarded. So, yes."
(Emphasis added.) At this point, it is clear that counsel for the City and the Utilities Board wanted clarification from the jury on the inconsistent verdict. The colloquy continues:
"Trial court: Well, what I am asking is: Do y'all agreethatthat's what I would think. I canI can come back *336 and recharge them on the nominal damage[s] charge that was presented by Hanson andand just see what they come up with, or I can just plain ask them if that was your intent in front of everyone. Or y'all can just accept it as an award of nominal damages andjust let them go.
"Mr. Byram [defense counsel]: We are satisfied.
"Mr. Adams [defense counsel]: Satisfied.
"Mr. Denson [defense counsel]: Satisfied.
"Mr. Vercelli: Which means what?
"Trial court: That they are agreeing that it's an award for nominal damages. I mean, essentially it would be the same thing as saying they awarded one dollar.
"Mr. Vercelli: Is that what the defendants are saying? That they agree it would be the same as awarding a dollar?
"Mr. Adams: Well, what is thewhat is the Plaintiffs' response, Your Honor, to the verdict? I don't know that there is a procedure by which the Defendant gets to be asked questions by Plaintiffs' counsel.
"Trial court: Well, there isthere is
"Mr. Adams: We are saying that we are satisfied with the verdict andas recorded and as explained by the Court.
"Trial court: All right.
Mr. Vercelli: It appears to me to be an inconsistent verdict. I don't see how they can award zero and find them at fault and then award nothing."
(Emphasis added.) It is clear that to this point, the City and the Utilities Board have not invited the court to do anything, consented to the verdict, or waived any objection to the verdict.
The colloquy then turned to whether the jury's verdict was based on a finding of nuisance or of negligence. Defense counsel stated that the jury had found that the quarry created a nuisance. In fact, the jury had indicated by special interrogatory that its verdict was based on negligence.
"Mr. Byram: It's a claim for public nuisance.
"Trial court: Well, that would be my interpretation, that they found that the burden of proof was met; they just didn't award any damages. . . .
"Mr. Vercelli: So that is a finding of public nuisance; we would be satisfied with nominal damages.
"Trial court: Okay. If y'all are satisfied, I will bring [the jury] back in and let them go."
Here, the City and the Utilities Board agreed that the verdict could be interpreted as one awarding nominal damages, and therefore valid, but only if it was based on a theory of nuisance. Hanson and Oldcastle argue that the City and the Utilities Board then "chose to accept the verdict" and "prompted the court to accept the verdicts and discharge the jury." The record, however, does not support this conclusion. The conference continues:
"Mr. Vercelli: Smith and Schwieker appear inconsistent.[[4]] I guess negligence is what it is.
"Trial court: Hum?
"Mr. Adams: That's a verdict on negligence.
"Mr. Vercelli: We will talk about it post-trial.
"Trial court: Yes, I mean
"Mr. Adams: That's a verdict on the negligence

*337 "Mr. Byram: Yes, I would. I may have misspoke, too. It's the negligence one that's checked here.
"Mr. Adams:theory, Your Honor.
"Trial court: Correct.
"Mr. Adams: That's right.
"Trial court: Okay. Bring [the jury] in."
At that point, the trial court discharged the jury. Contrary to Hanson and Oldcastle's assertion, the City and the Utilities Board did not express satisfaction with an inconsistent verdict on their negligence claim. Nor did they "prompt" the trial court to discharge the jury.
The record indicates that counsel for the City and the Utilities Board, defense counsel, and the trial court all understood that if the verdict was based on negligence (as opposed to nuisance), it was inconsistent, and some corrective action was necessary. The trial court suggested three ways to resolve the inconsistency: 1) recharge the jury, 2) poll the jury in open court, or 3) have the parties agree to treat the verdict as one for nominal damages. The trial court was trying to fix the problem created by the inconsistent verdict, and counsel for the City and the Utilities Board insisted that there was a problem. In the ensuing confusion, for which the City and the Utilities Board cannot be held responsible, the jury was discharged without any of the court's proposed solutions having been put in place.
The only statement that even comes close to an agreement by the City and the Utilities Board to discharge the jury is Mr. Vercelli's statement that "[w]e will talk about it post-trial." This statement, however, cannot be characterized as a waiver of the right to challenge an inconsistent verdict. Instead, the statement declared that the City and the Utilities Board were not abandoning the issue but would raise it in a later motion.
We conclude that the City and the Utilities Board did not consent to an inconsistent verdict or invite the court to commit error and that their motion for a new trial was sufficient to preserve the inconsistent-verdict issue for review.[5] The trial court erred in denying that motion, and the City and the Utilities Board are entitled to a new trial on their negligence claim.

3. Evidentiary rulings
The trial plaintiffs argue that the trial court erred by excluding four pieces of evidence:
"This evidence included (1) testimony, with supporting documentation by the Lee County Engineer, Neal Hall, that the County was required to spend a quarter of a million dollars to repair less than 1,000' of one road that was damaged by the quarry, (2) testimony from Mr. Hall that the bridge over the Little Uchee Creek, which was within a few hundred feet of multiple large sinkhole collapses in the Little Uchee and on or near the Spring Villa Road right-of-way, could fail if a sinkhole developed on one of its supports, (3) testimony from a qualified civil engineer, Derek Barrentine, that if a sinkhole formed under the *338 Dixie LP Gas Pipeline, then due to the weight of the earth above and the pipeline itself, the pipeline sag and crack [sic], causing an explosion, and (4) testimony and supporting documentary evidence (in the form of a certified ADEM [Alabama Department of Environmental Management] record) that the quarry intended to increase pumping from 4.5 mgd to 10 mgd."
(Brief of Appellants at pp. 62-63.)
The objections to the exclusion of items (2), (3), and (4) have not been properly preserved for review. The record shows that the trial plaintiffs failed to present the substance of item (2) to the trial court.[6] As to item (3), Derek Barrentine, a civil engineer, was to testify about what might have happened if a sinkhole appeared near the liquified-petroleum gas pipeline. The trial court stated that it would allow this testimony "as far as the injunctive relief portion of the case." The trial plaintiffs' counsel responded: "And that's all we havethat's the only reason we are offering it." Because the question of injunctive relief was to be decided (if necessary) by the court, not the jury, this statement by plaintiffs' counsel waived any objection to the trial court's decision to keep that evidence from the jury. Finally, the trial plaintiffs have failed to identify the testimony or documents constituting item (4). As a result, our analysis is limited to whether the trial court exceeded its discretion by excluding the testimony of Neal Hall, the county engineer for Lee County, about the road-repair expenses Lee County would incur as a result of the quarry's operation.
According to the trial plaintiffs' brief, the trial court kept Hall's testimony from the jury because 1) Lee County was not a party to the litigation, and 2) evidence of a non-party's expenditures might confuse the jury on the issue of damages. A trial court has discretion to exclude otherwise admissible evidence in order to avoid misleading the jury. Rule 403, Ala. R. Evid. The trial plaintiffs' conclusory responsethat "such problems were either nominal or could have been resolved by an appropriate instruction rather than not admitting the evidence" is insufficient to show that the trial court exceeded that discretion. The trial plaintiffs' arguments regarding the exclusion of evidence do not require a new trial.

4. Injunctive relief
Finallyand despite the jury's verdict that the quarry was not a nuisancethe trial plaintiffs argue that the trial court erred by failing to enjoin the quarry's continued operation. They cite City of Birmingham v. City of Fairfield, 375 So.2d 438 (Ala.1979), and McClung v. Louisville & Nashville Ry., 255 Ala. 302, 51 So.2d 371 (1951), as examples of cases in which "this Court has previously held that a finding of negligence can support injunctive relief."
Both City of Birmingham and McClung support the proposition that "a nuisance may result from acts or omissions that constitute negligence." City of Birmingham, 375 So.2d at 441. Neither case, however, stands for the proposition that a trial *339 court may enjoin conduct that does not constitute a nuisance.
In this case, the factual issue whether the quarry was a nuisance was inextricably linked with the plaintiffs' request for injunctive relief. See Wootten v. Ivey, 877 So.2d 585, 589 (Ala.2003). Because the jury found no nuisance, the trial court properly refused to consider whether the trial plaintiffs were entitled to an injunction.

B. Issues Arising from the Summary Judgment
In the first trial, the jury found that the quarry did not constitute a nuisance. The trial court then ordered that the claims of all the remaining plaintiffs alleging a public nuisance and/or seeking injunctive relief were barred. The remaining plaintiffs argue that this order deprived them of their day in court on those issues; Hanson and Oldcastle respond that the trial court's order is justified either under the doctrine of res judicata or collateral estoppel or because of an agreement between the parties.
Res judicata bars relitigation of a claim only in a subsequent action. Interstate Truck Leasing, Inc. v. Bender, 608 So.2d 716, 718 (Ala.1992), overruled on other grounds, State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834 (Ala.1998). When a case is divided into separate trials pursuant to Rule 42, Ala. R. Civ. P., those trials remain part of a single action and the doctrine of res judicata does not apply to the later trials. 608 So.2d at 718.
Neither does collateral estoppel apply:
"[S]ince separate trials do not individually produce final judgments, any attempt to apply collateral estoppel to the remaining . . . trials would be invalid under a Rule 42(b) regime."
Acevedo-Garcia v. Monroig, 351 F.3d 547, 560 (1st Cir.2003).[7] The approach in Acevedo-Garcia is consistent with our approach in Interstate Truck Leasing, as well as with hornbook law stating that collateral estoppel bars relitigation "in a subsequent action." Restatement (Second) of Judgments § 27; see also 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2387 (1995)("Rule 42(b) allows the court to order a separate trial of any claim. . . . Separate trials usually will result in one judgment. . . . ").
As a result, in a single action involving separate trials under Rule 42(b), Ala. R. Civ. P., a result in one trial will typically not be binding on parties not involved that trial, absent an agreement of the parties or an order of the court. In this regard, Hanson and Oldcastle argue that all the plaintiffs agreed to be bound by the jury's verdict in the first trial as to whether the quarry constituted a public nuisance. The parties, with the trial court's approval, certainly could have agreed to structure the case that way. The trial court, by order, could also have so structured the case. However, the record does not reveal such an agreement or order.
During pretrial conferences, the parties made a number of statements concerning what effect a verdict in the first trial might have on subsequent trials. Interestingly, the parties' pretrial positions were essentially the opposite of their positions on appeal: the plaintiffs suggested that the first trial might have a preclusive effect on subsequent trials, and Hanson disagreed *340 (Oldcastle had not yet been joined as a defendant). The parties were unable to agree, and these statements thus amount to nothing more than ideas about how the case might have been tried.
The parties also submitted competing written trial plans. The plaintiffs' proposed trial plan summarizes the scope of the first trial as follows:
"1. Plaintiffs will identify 6-8 families as Parties Plaintiff to the first trial. In addition, the City of Opelika, the Opelika Utilities Board, and the Beauregard Water Authority[[8]] will be Plaintiffs during the first trial. Therefore, the jury will only have to consider the claims of between 9 and 11 Plaintiffs rather than 64.

". . . .
"4. The jury would be informed that another 20 families have the same or similar claims, that those families [sic] claims will be tried separately, and that some of those homeowners would be allowed to testifyespecially those that have complained in writing or in person to Hanson."
(Emphasis added.) Hanson's proposed trial plan stated:
"Hanson submits that plaintiffs' attorneys should select one family unit from each geographic area and that the defendants' attorneys jointly should select one family unit from each geographic area for trial of their damages and injunctive relief claims based on quarry operations (noise, dust, blasting). Thus, the first trial would resolve the claims of six of the 27 family units. The results in this first trial would serve as a benchmark for the possible resolution of the quarry operations claims of the remaining individual plaintiffs. As stated, there would be little, if any overlap between the two phases."
(Emphasis added.) Neither of the proposed trial plans shows an agreement to bind all plaintiffs in subsequent trials to the verdict in the first trial. According to the plaintiffs' plan, the jury would consider the claims of between 9 and 11 plaintiffs; the claims of the remaining plaintiffs would "be tried separately." According to Hanson, the jury would hear the claims of six "family units," leading to "possible resolution" of the remaining claims.
The parties failed to agree on how the case should proceed, and the trial court entered the following scheduling order:
"Regarding the Proposed Trial Plan submitted by the parties, it is the Court's decision that the Water Authorities along with (6) other Plaintiffs' cases will be tried in July. The parties are to meet and determine whether or not they can agree as to which six (6) individual Plaintiffs should be tried at that time."[9]
This order did nothing more than identify which plaintiffs would participate in the first trial. It did not state that the first trial would dispose of all public-nuisance claims; nor did it state that any other plaintiff would be bound by any part of the result of the first trial. Because the trial court's scheduling order "shall control the subsequent course of the action unless modified by a subsequent order," Rule 16(e), Ala. R. Civ. P., Hanson and Oldcastle's argumentthat plaintiffs who did not participate in the first trial are bound by *341 the verdict in that trial finding that the quarry is not a nuisanceis unpersuasive. That verdict cannot bar the nuisance claims of the remaining plaintiffs, and the summary judgment therefore must be reversed.[10]

C. Statutory Damages Under § 33-7-4
Finally, the plaintiffs have asked the Court to provide "guidance" on the correct measure of damages under § 33-7-4, Ala.Code 1975. They concede, however, that "this cause of action was dropped from the 2004 trial." Although the plaintiffs argue that the issue will inevitably arise in a future trial, it is not now ripe for review.

III. Conclusion
Because the jury's verdict on the negligence claim was inconsistent as to the City and the Utilities Board, in case no. 1040857 we reverse the judgment as to those plaintiffs, but only on the negligence claim. In all other respects, the judgment entered on the jury's verdict is affirmed. We also reverse the summary judgment in favor of Hanson and Oldcastle. The case is remanded for further proceedings consistent with this opinion. In cases no. 1040940 and no. 1040945, Hanson and Oldcastle's cross-appeals, we affirm.
1040857AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
1040940AFFIRMED.
1040945AFFIRMED.
LYONS, HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
SEE, J., concurs specially.
SEE, Justice (concurring specially).
I concur in the main opinion.
I write specially to note that in this proceeding, broken into separate trials pursuant to Rule 42(b), Ala. R. Civ. P., the parties disagreed as to whether they intended the first trial to have a preclusive effect on claims or issues that arose in the second trial, and the trial court did not resolve that disagreement before the first trial. The trial court can provide in a Rule 42(b) proceeding that the resolution of certain issues in a first trial will preclude litigation of those issues in a subsequent trial; however, I believe that it must do so in accord with the admonition in Rule 42(b) that an order of separate trials must "always preserv[e] inviolate the right of trial by jury as declared by Article 1, Section 11 of the Alabama Constitution of 1901." For this reason, the understanding that a first trial will be binding on participants in a subsequent trial who were not participants in the first trial must be clear. See Dodge v. Cotter Corp., 203 F.3d 1190, 1200 (10th Cir.2000) ("If the parties intended to bind subsequent litigation with the results of prior test trials, the record must clearly memorialize that agreement. Their failure to do that here leaves important substantive rights at the mercy of trial tactics."), and In re TMI Litig., 193 F.3d 613, 725 (3d Cir.1999) ("However, absent a positive manifestation of agreement by Non-Trial Plaintiffs, we cannot conclude that their Seventh Amendment right is not compromised by extending a summary judgment against the Trial Plaintiffs to the non-participating, *342 non-trial plaintiff.").[11]
When there is a reasonable basis for dispute as to whether there was a clear pretrial understanding as to the effect of the first trial on a later trial, and, if there was, as to the nature of that understanding, this Court should, I believe, give proper deference to the trial judge. Here the trial judge concluded, in relevant part:
"The claims of the remaining plaintiffs that the quarry is a public nuisance due to noise, dust, blasting, and/or dewatering, based on quarry operations up to and including the August 2004 trial of this case, are barred. The claims of the remaining plaintiffs for injunctive relief, based on quarry operations up to and including the August 2004 trial of this case, are barred. The claims of the remaining plaintiffs, to recover money damages for specific injury to their person or property based on quarry operations are not barred."
(Emphasis in original.) Thus, if there were a reasonable basis for dispute as to whether there was a clear understanding and as to what that understanding was, I would give due weight to the conclusion of the trial judge that the first trial was to have had a preclusive effect on the claims asserted in the second trial. However, I agree with the characterization of the record as it is presented in the main opinionthat there was actual disagreement between the parties and that the trial judge did not resolve that disagreement before the first trial. Therefore, in light of the admonition of Rule 42(b) that the right to trial by jury be preserved, I concur in the main opinion.
NOTES
[1] Hanson operated the quarry until July 2003; Oldcastle has operated the quarry from July 2003 to the present.
[2] Hanson and Oldcastle cross-appealed in cases no. 1040940 and no. 1040945. However, after reviewing the issues as framed by the appellants in case no. 1040857, they have chosen not to pursue those cross-appeals. (Joint Brief of Hanson and Oldcastle at p. 3.)
[3] For example, the jury could have believed the Parkers' and the Schwiekers' testimony, but disbelieved testimony from the other individual plaintiffs. There was also evidence that the damages claimed by some of the individual plaintiffs were not caused by the quarry. For example, Mike Broadwater testified that he was damaged by dust from the quarry. However, he admitted that he had an unusual sensitivity to dust as a result of a double lung transplant. Broadwater also testified that blasting at the quarry caused cracks in his house. However, he admitted that this house was more than 50 years old and that concrete can crack from normal wear and tear. A reasonable juror could have concluded from this evidence that the quarry was not the proximate cause of any of Broadwater's injuries.
[4] This was a separate objection to an alleged inconsistency between the finding of liability with respect to members of the Schwieker family (as discussed in part II.A.1), but no liability with respect to members of the Smith family.
[5] The City and the Utilities Board were permitted to raise this issue in a motion for a new trial:

"Appellants' asserted objection [on inconsistency] is not grounded on the `form,' `irregularity,' or `informality' of the verdict; rather, it is grounded on the `inadequacy' or `inconsistency' thereof. Likewise, Appellants' failure `to object' is not within the purview of Appellees' cited authority and did not constitute nonfeasance on Appellants' part. Appellants' challenge to the jury's verdict on grounds of `inadequacy' and `inconsistency' was properly made in their motion for a new trial."
Stinson, 391 So.2d at 662.
[6] At trial, Neal Hall, the county engineer for Lee County, was asked if sinkholes could "cause concern about the safety of that bridge." Defense counsel immediately objected, and the trial court sustained the objection. The trial plaintiffs failed to proffer how Hall would have answered the question. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected and . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Rule 103(a)(2), Ala. R. Evid.
[7] Acevedo-Garcia applied Rule 42(b), Fed. R.Civ.P. Rule 42(b), Ala. R. Civ. P., is identical to the federal rule.
[8] The Beauregard Water Authority was not one of the plaintiffs in the first trial.
[9] It appears that the court meant six families, as opposed to six individuals. The reference to the "Water Authorities" seems to be a reference to the City and the Utilities Board. The Beauregard Water Authority was not included in the first trial.
[10] At oral argument before this Court, counsel for Oldcastle argued that without preclusion of the nuisance claims and injunctive relief, Oldcastle may face a number of separate trials, each of which would subject it to the possibility of injunctive relief. Of course, the decision to grant or deny injunctive relief is in the discretion of the trial court. Should a future jury find that the quarry is a nuisance, it will be up to the trial court to determine whether injunctive relief is appropriate.
[11] Consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." Johnson v. Manhattan Ry., 289 U.S. 479, 496-97, 53 S.Ct. 721, 77 L.Ed. 1331 (1933) (footnote omitted).