[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 344 
This is an underinsured-motorist case. Dustin Scott Smith, Gail Smith, and Larry Smith appeal from a summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm"). We reverse and remand.
 I. Facts and, Procedural History
On May 30, 2002, 18-year-old Dustin Smith was severely injured in an automobile accident in Chilton County. James Arant was driving the automobile, and Dustin was a passenger.[1] The parties agree that Arant is liable for the accident; Arant is an underinsured motorist. Dustin's spine was fractured in the accident. Because of his brittle-bone disease, the injury has not healed well, and he continues to suffer physically.
On September 4, 2002, Dustin sued Arant and State Farm, asserting tort claims against Arant[2] and claims for underinsured-motorist benefits against State Farm. At the time of the accident, Dustin's parents, Gail Smith and Larry Smith, owned seven cars, each insured with State Farm under separate policies. Each policy provided for underinsured-motorist coverage. Six of the policies were issued by a State Farm office in Pelham, Alabama ("the Alabama policies"). However, the insurance policy covering Gail's Jaguar automobile was issued by a State Farm office in Destin, Florida ("the Florida policy"). Dustin claimed underinsured-motorist benefits under the Alabama policies and the Florida policy. State Farm counterclaimed against Dustin, seeking a judgment declaring that the Alabama policies could not be stacked with the Florida policy. State Farm added Gail Smith and Larry Smith as counterclaim defendants.
The parties do not dispute that each Alabama policy contained underinsured-motorist coverage of $20,000 for a single injury and that the six policies can be "stacked" for a total of $120,000 in under-insured-motorist benefits. The Florida policy provides underinsured-motorist benefits of $500,000. However, the Florida *Page 345 
policy contains a provision prohibiting it from being "stacked" with other insurance.
The Smiths reside in Chilton County, Alabama. In 2000, the Smiths bought a second house in Destin, Florida ("the Florida house"), to use on weekends and vacations. After they purchased the Florida house, the property tax on the Florida house increased. The Smiths learned that the property tax would decrease if one of the Smiths were to establish his or her domicile in Florida and take advantage of the homestead exemption on the Florida house. In an effort to establish domicile in Florida, Gail decided to obtain a Florida driver's license and to register her Jaguar in Florida.
In August 2001, Gail surrendered her Alabama driver's license and obtained a Florida driver's license. Because Gail needed to insure her car in Florida before she registered it in Florida, she visited a State Farm office in Destin, Florida, to switch the insurance coverage for her Jaguar from insurance issued in Alabama to insurance issued in Florida. Gail states that she explained to the State Farm representative that she was trying to lower the property tax on the Florida house and that her primary residence was in Alabama. Gail gave the agent the address for the Florida house, but she says that she asked that State Farm mail her policy, premium notices, and other correspondence to her primary mailing address in Thorsby, Alabama.
Evidence indicates that the State Farm representative communicated with Gail's State Farm agent in Pelham, Alabama, and learned about the Smiths' insurance policies on their house in Alabama and on their six other cars. Based on that information, the Florida State Farm office determined that Gail's insurance policy on the Jaguar qualified for "multi-vehicle" and "multi-line" discounts.[3]
State Farm sent a renewal notice on the Florida policy for the period of January 16, 2002, to July 16, 2002, to Gail's mailing address in Alabama.[4] On or about December 31, 2001, Gail paid the premiums to renew the Florida policy for that period.
On January 4, 2002, approximately five months before Dustin's accident, Gail sued Larry for a divorce. It appears that Gail stayed at the Florida house for two weeks immediately after serving the divorce papers; however, she resided primarily at the couple's Alabama house from mid-January 2002 until late 2003. Gail's Jaguar was principally garaged in Alabama during that time. Gail testified at her deposition that she continued her residence at the Smiths' Alabama house (1) to attempt to reconcile with Larry, (2) to devote attention to Dustin's drug-related problems, and (3) to continue her work, which was in Alabama. Both Larry and Gail testified at their depositions that, at the time of Dustin's accident in May 2002, Gail had been living primarily in Alabama and that her Jaguar was primarily garaged in Alabama.
In the trial court, State Farm and the Smiths did not dispute that Arant was liable for the accident and that the amount necessary to cover the injuries Dustin sustained *Page 346 
in the accident exceeded $645,000. State Farm contended, however, that Dustin could receive either the underinsured-motorist benefits under the Florida policy, i.e., $500,000, or the underinsured-motorist benefits under the Alabama policies, stacked, i.e., $120,000. The parties agreed that, if Dustin could not stack the Alabama policies with the Florida policy, then Dustin would choose to receive the underinsured-motorist benefits under the Florida policy. Thus, the parties stipulated (1) that State Farm would pay Dustin $500,000, and (2) that the parties would litigate whether Dustin could also receive underinsured-motorist benefits of $120,000 under the Alabama policies. The parties filed cross-motions for a summary judgment on the stacking issue.
The trial court initially entered a summary judgment in State Farm's favor without explicitly ruling on the Smiths' motion. The Smiths moved the trial court to alter, amend, or vacate its summary judgment in favor of State Farm pursuant to Rule 59, Ala. R. Civ. P. After a hearing, the trial court entered an order again granting State Farm's summary-judgment motion and explicitly denying the Smiths' motion for a summary judgment. The Smiths appeal.
 II. Standard of Review
We review the trial court's grant or denial of a summary-judgment motion de novo, and we use the same standard used by the trial court to determine whether the evidence presented to the trial court presents a genuine issue of material fact. Bookman v. WCH, L.L.C., 943 So.2d 789
(Ala. 2006). Once the summary-judgment movant shows there is no genuine issue of material fact, the nonmovant must then present substantial evidence creating a genuine issue of material fact.Id. "We view the evidence in the light most favorable to the nonmovant." 943 So.2d at 795. We review questions of lawde novo. Davis v. Hanson Aggregates Southeast, Inc.,952 So.2d 330 (Ala. 2006).
 III. Analysis
The Smiths argue that § 32-7-23, Ala. Code 1975, a part of the Alabama Motor Vehicle Safety-Responsibility Act, is applicable to the Florida policy and, therefore, that the underinsured-motorist coverage provided by the Florida policy can be "stacked" with the underinsured-motorist coverage in the Alabama policies. Viewing the facts most favorably to the Smiths, we agree with the Smiths' argument, and we reverse the summary judgment in favor of State Farm.
State Farm would have us apply Florida's conflict-of-laws rules. However, State Farm offers no Alabama authority indicating that an Alabama court must apply Florida's conflict-of-laws rules to a case filed in Alabama that involves insurance coverage for an accident that occurred in Alabama. We apply our own conflict-of-laws rules to determine whether, substantively, the Alabama Motor Vehicle Safety-Responsibility Act applies to the Florida policy. See Taylor v. TennesseeFarmer's Mut. Ins. Co., 659 So.2d 30 (Ala. 1995) (reviewing the facts of the case to determine that Alabama law, not Tennessee law, applies in determining the available underinsured-motorist benefits without reviewing whether Tennessee conflicts law applies); Best v. Auto-OwnersIns. Co., 540 So.2d 1381, 1381-83 (Ala. 1989) (stating that the conflict-of-laws issue was presented in underinsured-motorist-coverage case, and, without reference to South Carolina's conflicts law, holding that Alabama substantive law did not apply); Cotton v. State Farm Mut. Auto. Ins.Co., 540 So.2d 1387 (Ala. 1989) (reviewing the facts of the case to determine that Tennessee law, not Alabama *Page 347 
law, applies in determining the underinsured-motorist benefits, without referring to Tennessee conflict-of-laws rules).
Generally, we apply the substantive rule of the state in which the insurance contract is formed. See Cotton,540 So.2d at 1388 (citing Davis v. Hartford Ins. Co. ofIllinois, Inc., 456 So.2d 302 (Ala. 1984), andAmerican Interstate Ins. Co. of Georgia v. Holliday,376 So.2d 701 (Ala. 1979), in which insurance contracts were formed in Illinois and Georgia, respectively, and this Court applied the substantive laws of those states to interpret the insurance contract to determine whether a party was covered under the insurance contract and whether the insurer had the duty to defend). However, that rule does not apply when the case involves a mandatory statute, such as the Alabama uninsured/under-insured-motorist statute, § 32-7-23, Ala. Code 1975.[5] See Cotton, 540 So.2d at 1388 (stating that because the cited cases dealt with insurance contracts in general and did not involve a mandatory statute such as Alabama's uninsured/underinsured-motorist statute, this Court had to determine whether, because the insurance contract contained a clause allowing enforcement of out-of-state motor-vehicle compulsory law, the Alabama uninsured-motorist coverage applied); see also Taylor, 659 So.2d at 31-32
(distinguishing the facts of the case from those inCotton and holding that the evidence supported the conclusion that the insurer knew that the insured resided in Alabama and that Alabama law applies).
In both Cotton and Taylor this Court considered how Section 32-7-23(a), Ala. Code 1975, applies. Section 32-7-23(a), Ala. Code 1975, provides:
 "No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits of bodily injury or death set forth in subsection (c) of Section 32-7-6, under provisions approved by the Commissioner of Insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer." *Page 348 
(Emphasis added.) Both Cotton and Taylor
state that the relevant issues for analysis are (1) whether the insurance contract was "delivered or issued for delivery" in Alabama, and (2) whether the insured vehicle is "registered or principally garaged" in Alabama.
In Cotton, the insured, a Tennessee resident whose cars were registered in Tennessee, was injured in an automobile accident that occurred in Alabama. Cotton,540 So.2d at 1387. The insured was employed in Alabama and resided in Hunts-vine during the week. He returned to Tennessee on the weekends. Id. The insured dealt with his insurance office in Tennessee and did not inform the insurance company of a change in his residence. Id.
This Court noted that Alabama's uninsured/underinsured-motorist statute, § 32-7-23, Ala. Code 1975, may have been applicable because the insured's policy contained an "Out-of-State Coverage" clause. 540 So.2d at 1388. That clause stated that "[i]f an insured under the liability coverage is in another State or Canada and, as a non-resident, becomes subject to its motor vehicle compulsory insurance . . . law . . . the policy will be interpreted to give the coverage required by the law."540 So.2d at 1388. Therefore, this Court reviewed the facts to determine whether § 32-7-23, Ala. Code 1975, applied.
This Court noted that it was "conceded that [the insured's] automobile was principally garaged in Alabama."540 So.2d at 1388. However, this Court reasoned that the policy was "delivered or issued for delivery" in Tennessee, not in Alabama:
 "[T]he policy was issued in Tennessee and the premium notices were always mailed to [the insured's] Atwood, Tennessee, address. The fact that [the insured] mailed his premium checks from Madison, Alabama, is of little consequence. . . . It would have been simple enough to notify [the insurance company] that he would be in Alabama most of the time and that it should mail his policies to him there."
540 So.2d at 1388. Thus, the Court held that Alabama's uninsured/underinsured-motorist statute was not applicable and that the trial court did not err in finding that the insurance policy was not "delivered or issued for delivery" in Alabama.540 So.2d at 1388.
In Taylor, Carl Taylor, the insured, was originally from Tennessee. 659 So.2d at 31. He purchased his car insurance in Tennessee. He then moved to Alabama and renewed his policy three times from Alabama. 659 So.2d at 31. After the insured moved, the insurance company mailed him a premium notice to his address in Tennessee. The premium notice was returned, with the insured's Alabama address noted on the return envelope. The insurance company ascertained that the insured's wife was in Alabama for medical school and renewed the policy.659 So.2d at 31.
The Court in Taylor distinguished Cotton.659 So.2d at 32. The Court noted that in Cotton the insurance company did not know that the insured was residing in Alabama during the week, and there was insufficient evidence indicating that the policy had been "delivered or issued for delivery" in Alabama. 659 So.2d at 32. The Court inTaylor then reasoned that the insurance company knew that Taylor was living in Alabama. Id. Because both prongs of § 32-7-23, Ala. Code 1975 — (1) that the insurance contract was "delivered or issued for delivery" in Alabama, and (2) that the insured car was "registered or principally garaged" in Alabama — were met, the Court concluded that Alabama law must be applied in determining the *Page 349 
underinsured-motorist benefits. 659 So.2d at 32.
In the case before us, Gail's Florida policy contains the following provision:
 "1. Out-of-State Coverage.
 "If an insured under the liability coverage is in another state or Canada and, as a non-resident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:
 "a. the policy will be interpreted to give the coverage required by the law."
Thus, we review the facts in the light most favorable to the Smiths to determine whether § 32-7-23(a), Ala. Code 1975, applies. See Cotton, 540 So.2d at 1388 (interpreting this same contractual language regarding the applicability of out-of-state compulsory-insurance law in Cotton's policy to require this Court to determine whether § 32-7-23, Ala. Code 1975, applies).
Gail presented substantial evidence indicating that the Florida insurance policy was "delivered or issued for delivery" in Alabama. The Court in Cotton emphasized that the insured there could have told the insurance company that he was residing in Alabama and that it was to mail the premium notices and policies to Alabama. Cotton, 540 So.2d at 1388. Unlike the insured in Cotton, here, Gail alleges that she specifically instructed the State Farm representative in Florida to mail all of Gail's insurance policies, renewals, and correspondence to her Alabama address. The State Farm office in Florida sent the premium notices for the Florida policy, including the premium notice covering the period in which Dustin's accident occurred, to Gail's Alabama address.
The Court in Taylor reasoned that whether the insurance company knew that the insured resided in Alabama was an important factor in determining whether the policy was "delivered or issued for delivery" in Alabama.Taylor, 659 So.2d at 32. Gail testified that she told the Florida State Farm representative that she primarily resided in Alabama during the week and that the Florida house was a second home. The record also shows that State Farm verified that Gail had a house in Alabama and six automobile policies issued in Alabama and that it gave her the "multi-line" discount on the policy covering the Jaguar. Gail presented substantial evidence indicating that the insurance policy and premium notices were sent to Gail's Alabama address and that the Florida policy was "delivered or issued for delivery" in Alabama.
In addition, Gail presented substantial evidence indicating that her Jaguar was "principally garaged" in Alabama. Although Gail's Jaguar was registered in Florida at the time of Dustin's accident, Gail presented substantial evidence showing that she lived primarily in Alabama and that the Jaguar was principally garaged at the Smiths' residence in Alabama.
Viewing the evidence in the light most favorable to the Smiths as the nonmovants, we conclude that Gail presented substantial evidence indicating that the Florida policy was "delivered or issued for delivery" in Alabama and that Gail's Jaguar was "principally garaged" in Alabama; therefore, §32-7-23, Ala. Code 1975, applies in this case. Thus, under these circumstances, we apply Alabama law to determine the underinsured-motorist benefits to which Dustin is entitled.Taylor, 659 So.2d at 32 (stating that where the two prongs are met, "pursuant to § 32-7-23, [Ala. Code 1975,] Alabama law must be applied in determining the underinsured benefits").
In Alabama, if the insured's loss exceeds the coverage limits of one policy *Page 350 
providing for underinsured-motorist benefits, then the insured can stack other policies with underinsured-motorist benefits to provide coverage to the full amount of the damages required to compensate for the injury or harm sustained.Canal Indem. Co. v. Burns, 682 So.2d 399, 401
(Ala. 1996) (stating that "the insured may stack the coverages provided by other uninsured motorist policies to cover up to the amount of damages required to compensate for the actual injury sustained"); State Farm Mut. Auto. Ins. Co. v. Fox,541 So.2d 1070, 1072 (Ala. 1989) (stating that "where the loss exceeds the limits of one uninsured motorist policy, the insured may stack other uninsured motorist policies to cover up to the actual damages sustained"). Section 32-7-23(c), Ala. Code 1975, provides: "The recovery by an injured person under the uninsured provisions of any one contract of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract." Section 32-7-23(c), Ala. Code 1975, thus limits to two the stacking of underinsured-motorist coverage in a single insurance contract, but under our caselaw it does not prevent stacking under two or more separate insurance contracts.Canal, 682 So.2d at 401 (stating that "[t]he statutory language clearly imposes a `limitation' only on the number of uninsured motorist coverages that can be stacked within one contract of insurance" and that "the statute does not prevent stacking under two or more separate contracts of insurance").
In this case, Dustin has already been paid $500,000 of underinsured-motorist benefits under the Florida policy. The additional $120,000 of underinsured-motorist benefits under the Alabama policies would be "stacked" with the amount paid under the Florida policy because Dustin's damages exceed $645,000 — the sum of the amounts available to Dustin under the Florida policy, the Alabama policies, and the settlement proceeds from Arant (see note 2, supra).
State Farm argues that the Florida policy contains a clause stating that "this coverage does not apply if other applicable coverage is selected." State Farm argues that this clause prevents "stacking." However, we have consistently held that such clauses cannot prevent "stacking" of coverages in Alabama. See Canal, 682 So.2d at 402 (holding that this Court has held "other insurance" and "limits of liability" clauses cannot prevent stacking of coverages and "are in derogation of well-settled Alabama law"); State Farm Mut.Auto. Ins. Co. v. Cahoon, 287 Ala. 462, 466,252 So.2d 619, 621 (1971) (holding that inclusion in an insurance contract of a liability-limiting clause to prevent an insured from recovering actual damages is ineffective against the liability imposed by Alabama's uninsured/underinsured-motorist statute); Safeco Ins. Co. of America v. Jones,286 Ala. 606, 614, 243 So.2d 736, 742 (1970) (holding that an insurer cannot avoid its statutorily imposed liability by
inserting a liability-limiting clause). Therefore, the liability-limiting clause in the Florida policy cannot prevent the "stacking" of the underinsured-motorist benefits of the Florida policy and the Alabama policies.
State Farm argues that § 32-7-23, Ala. Code 1975, does not apply in this case because, it says, Gail allegedly executed an affidavit declaring Florida to be her permanent residence for purposes of obtaining the Florida homestead exemption. Whether Gail declared Florida to be her permanent residence in an affidavit, however, does not affect whether § 32-7-23, Ala. Code 1975, applies. We are concerned *Page 351 
only with whether the two prongs of the statute are satisfied, and we have determined that they are.
State Farm argues that Gail is equitably estopped from arguing that her Jaguar was principally garaged in Alabama because she gave the State Farm agent in Florida the address of the Florida house as her residence, and in order to obtain a Florida homestead exemption she allegedly signed an affidavit declaring Florida to be her permanent residence. For equitable estoppel to apply, (1) the actor with knowledge must communicate misleadingly; (2) the other must rely on the misleading communication; and (3) the other must be harmed materially if the actor acts inconsistently with his earlier conduct. Haginas v. Haginas, 598 So.2d 1334, 1337
(Ala. 1992) (quoting Dobbs, Remedies, § 2.3 (1973)).[6] Viewing the facts in the light most favorable to the Smiths, we conclude that State Farm failed to show that Gail communicated falsely about her situation: The record indicates that Gail disclosed to the State Farm representative in Florida what she was doing and why she was doing it, and that the Florida State Farm representative took the steps necessary to ascertain Gail's residency in Alabama so that she could receive a "multi-line" discount based on the homeowner's and automobile insurance policies in Alabama. Thus, it would appear that State Farm was aware of the truth when it entered into the contract with Gail for the Florida policy, and, therefore, it cannot assert estoppel. See Union Oil Co. of California v.Colglazier, 360 So.2d 965, 969 (Ala. 1978) (stating that "[a] party who seeks to assert an estoppel must have beenignorant of the truth at the time of the conduct amounting to the representation and at the time when that conduct was acted upon"); Cosby v. Moore,259 Ala. 41, 47, 65 So.2d 178, 182 (1953) (stating that there is no estoppel if nothing was done by one to mislead the other).
The Smiths raise two additional arguments. They argue (1) that the trial court exceeded its discretion in failing to strike an affidavit submitted by State Farm in support of its summary-judgment motion, and (2) that the trial court erred in denying their summary-judgment motion asserting that they are entitled to prejudgment interest on the $120,000. Because we conclude that the trial court erred in entering the summary judgment in favor of State Farm and are remanding this case for further proceedings, we pretermit discussion of these issues.
 IV. Conclusion
We conclude that the trial court erred in entering a summary judgment in favor of State Farm and against the Smiths. Therefore, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
[1] It appears from an internal State Farm memorandum that the vehicle involved in the accident did not belong to the Smiths.
[2] All claims against Arant were settled after Arant's insurance carrier paid the Smiths the $25,000 limit of Arant's policy, and State Farm waived its subrogation interest. Arant was dismissed as a defendant on June 4, 2004.
[3] The record also reflects that State Farm had a "master record" as of February 20, 2004, that listed the Smiths' home address in Alabama as Gail's residential address and included comments about the Smiths' various policies in effect from September 3, 1992, to February 5, 2004, including the policy covering Gail's Jaguar. The "master record" did not list the Florida house as the residential address for anyone in the Smith family.
[4] The parties do not dispute that the renewal notices for the Florida policy were sent to Gail's mailing address in Alabama and that Gail continuously paid the premiums to maintain the Florida policy.
[5] In Cotton, this Court also cited State FarmMutual Automobile Insurance Co. v. Bradley, 293 Ala. 695,309 So.2d 826 (1975), for the proposition that generally we apply the substantive law of the state where the insurance contract was formed. Cotton, 540 So.2d at 1388. In citing Bradley, this Court stated that that case,Davis, supra, and Holliday, supra, are examples of cases dealing with insurance contracts in general and that they did not involve a mandatory statute, such as § 32-7-23.Cotton, 540 So.2d at 1388. However, Bradley
involved a resolution of whether the uninsured-motorist coverage can be "stacked" under South Carolina law. 293 Ala. at 696,309 So.2d at 827. We held in that case that South Carolina law applied because the cars were principally garaged in South Carolina and the policies had been issued in South Carolina.Id. The facts of that case, therefore, were such that the Alabama uninsured/underinsured-motorist statute was not applicable.
[6] "`"An estoppel . . . has three important elements. The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct."'" 598 So.2d at 1337 (quoting Mazer v. JacksonIns. Agency, 340 So.2d 770, 773 (Ala. 1976), quoting in turn Dobbs, Remedies § 2.3 (1973)). *Page 352