Application for Rehearing
The opinion of September 3, 1999, is withdrawn, and the following opinion is substituted therefor.
Barney William Bynum, Jr. (the "worker"), was a crewman for Huntsville Utilities (the "company") from July 1994 to October 1995. On October 4, 1995, the worker injured his neck, right shoulder, and right arm in an automobile collision while performing his duties as a crewman. As a result of his injuries, he suffered a loss of strength and movement in his right arm; because of his injuries, he can no longer perform the duties he performed as a crewman.
The worker's injuries also resulted in severe and debilitating pain; however, after a spinal stimulator was implanted in November 1996, the worker's pain level decreased from a 10+ without the stimulator to a 2 or 3 with the stimulator, on a scale of 1 to 10. However, the stimulator itself, while relieving most, and sometimes all, of the worker's pain, prevents the worker from sleeping well.
After the stimulator made it possible for the worker to return to work, he was offered two positions with the company. Although he declined a position as a meter reader, because, he said, he was unable to do the necessary work with his arm, he took a position as a dispatcher. He satisfactorily completed the training required to become a dispatcher and, according to his supervisor, performed the job well. The worker testified that he enjoyed his job as a dispatcher. He also testified that on "bad days" when he perhaps felt more pain or his arm would swell more than usual, he would take a short break from his desk and do other tasks while another dispatcher "spelled" him.
The worker sued the company, seeking workers' compensation benefits. After a trial, the court awarded the worker permanent partial-disability benefits based on a 35% physical-impairment rating. The court also credited the company $16,675 ($25,000 less an attorney fee of $8,325) the worker received from a third-party tortfeasor. After the credit, the company was required to pay only $2,973.92 in benefits to the worker. The trial court also awarded a 15% attorney fee based upon the $2,973.92 in benefits. The worker appeals, arguing (1) that the trial court erred by not finding him permanently and totally disabled or at least assigning him a 60% physical-impairment rating; (2) that the trial court erred in computing his average weekly wage; and (3) that the trial court incorrectly computed the credit due to the company and the attorney fee due the worker's attorney. We affirm in part, reverse in part, and remand. *Page 245 
Our review of this case is governed by the new Worker's Compensation Act, which states in pertinent part: "In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2). Therefore, this court "will view the facts in the light most favorable to the findings of the trial court." Whitsett v. BAMSI, Inc., 652 So.2d 287, 290
(Ala.Civ.App. 1994), overruled on other grounds, Ex parte Trinity Indus.,Inc., 680 So.2d 262, 269 (Ala. 1996). Further, the trial court's finding of fact is supported by substantial evidence if it is "supported by `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'"Ex parte Trinity Indus., 680 So.2d at 268-69 (quoting West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989), and citing § 12-21-12(d)). Our review of legal issues is without a presumption of correctness. Ala. Code 1975, §25-5-81(e)(1); see also Ex parte Trinity Indus., 680 So.2d at 268.
The worker argues that the trial court had before it substantial evidence from which it could determine that he is permanently and totally disabled or that his physical-impairment rating should be at least 60%. He argues that the testimony of Dr. Thomas Kraus, the physician who implanted the spinal stimulator, indicates that the stimulator is likely to stop working in the future and that Dr. Kraus assigned him an 80% impairment rating. The medical records of Dr. Ray Fambrough indicate that the worker had a 9% impairment to his arm, translating to a 4% impairment to the whole body.
The worker testified that he is able to work as a dispatcher and that his pain level is much lower because of his stimulator. He testified about his arm, describing it as discolored, numb, and lifeless. He further stated that he could do very little with the arm unless he concentrated solely on the task. For example, to pick up a cup, the worker said, he would have to concentrate on that task and even a slight distraction would result in his losing his grip. He described the difficulty in sleeping the stimulator caused. He explained that he could not sleep on his back, because, he said, the stimulator would overstimulate his spinal cord; according to his wife, the overstimulation caused his whole body to jolt. He further explained that he could not sleep on his right side, because if he attempted to do so the implant on his right hip would bother him.
A trial court is not bound by the testimony of experts and can consider the testimony of the worker to make its finding of disability. Compass Bank v. Glidewell, 685 So.2d 739, 741
(Ala.Civ.App. 1996); Jim Walter Resources, Inc. v. Budnick,619 So.2d 926, 927 (Ala.Civ.App. 1993); see also Alabama Catfish,Inc. v. James, 669 So.2d 917, 919 (Ala.Civ.App. 1995). The trial court is entrusted with the difficult task of resolving the conflicts in evidence presented to it. Sullivan, Long Hagerty,Inc._v. Goodwin, 658 So.2d 493, 495 (Ala.Civ.App. 1994);Budnick, 619 So.2d at 928. In this case the trial court determined that the worker suffered only a 35% impairment to the body as a whole. The trial court's determination, which is between the impairment ratings assigned by the worker's doctors, is supported by substantial evidence, and this court cannot reverse that finding. Ala. Code 1975, § 25-5-81(e)(2).
The worker also argues that the trial court erred in computing his average weekly wage. A worker's average weekly wage is computed by dividing the total wages earned by the worker in the previous 52 weeks by 52. Ala. Code 1975, § 25-5-57(b). However, if the worker "lost more than seven consecutive days during that [52-week] period . . ., then the earnings for the remainder of the . . . 52 weeks shall be divided by the number of weeks *Page 246 
remaining after the time so lost has been deducted." Id.
The worker argues that before computing his average weekly wage the trial court should have omitted five pay periods in which he worked less than 40 hours. The worker is paid bi-weekly. The trial court omitted from the calculations one pay period that reflected no income; however, the trial court did not omit the other pay period in which he worked no hours. The worker argues that that particular pay period should not have been included in the average-weekly-wage computations. That particular pay period is reflected on the worksheet twice, one entry indicating that the worker earned no income and the other reflecting a $62.82 wage for the same pay period. This "pay period," and its $62.82 wage, should not have been included in the computation of the average weekly wage. Thus, the trial court erred in computing the worker's average weekly wage. On remand, the trial court is instructed to recalculate the worker's average weekly wage. The court should omit that particular "pay period" from its recomputation on remand.
The worker also argues that two other pay periods for which the worksheet reflects reduced wages should have been omitted before computing his average weekly wage. Without an exhibit showing that the worker missed at least seven consecutive days during these pay periods, we cannot hold the trial court in error for including them in the computation.
The worker further argues that the trial court should not have considered the first pay period on the worksheet because it occurred more than 52 weeks before his accident. The trial court, in its judgment, "calculate[d] the exact wages for this time period by figuring the actual number of days in the first and last pay periods during the one year prior to [the worker's] injury." Attached to the judgment is a calculation sheet on which the court figured the worker's average weekly wage. The trial court correctly considered only the wages earned on October 6 and October 7, 1994, in computing the worker's average weekly wage. However, it appears that the trial court miscalculated the wages the worker earned in that two-day period. The worker earned $751.83 for the two-week pay period ending October 7, 1994. The trial court should have divided that figure by 10 (the number of days actually worked during the pay period) and then multiplied the resulting figure by two to determine the pay the worker earned on those two days. Therefore, the trial court should have determined that the worker earned $150.37 for those two days, not $300.73 as reflected on the court's exhibit.
The worker also argues that the trial court erred in calculating the company's credit for a recovery from a third-party tortfeasor and in computing the worker's attorney fees for the compensation action after deducting that credit from the compensation due the worker. See Ala. Code 1975, § 25-5-11(a) (providing that a third-party recovery is to be credited against the liability of the employer for compensation). The worker specifically argues first that the trial court erred by not awarding his expenses out of the third-party settlement. However, this court has held that the language of § 25-5-11(e), which does not contain the word "expenses," does not authorize a trial court to require that a company pay the pro rata share of expenses incurred in securing the settlement. Insurance Co. of NorthAmerica v. Phillips, 523 So.2d 447, 448 (Ala.Civ.App. 1988).
The worker further argues that the trial court should have calculated the attorney fee for the compensation action before reducing the award by the credit due under § 25-5-11(e), but he fails to cite any authority to that effect. However, if the trial court had calculated the attorney fee for the compensation action based on the amount of compensation actually owed to the worker, then reduced the worker's *Page 247 
award by the credit due to the company, the worker would have to pay a larger fee out of his reduced recovery, thus further reducing his compensation award. Such a result would be unfair to the worker and would not further the beneficent purposes of the Workers' Compensation Act. The worker's award of compensation had to be reduced by the amount of his third-party recovery under §25-5-11(a), and the trial court awarded him only $2,973.92 in compensation after the credit. Accordingly, the attorney fee for the compensation action must also be limited because the fee in a workers' compensation action "shall not exceed 15% of the compensation awarded or paid." Ala. Code 1975, § 25-5-90
(emphasis added). If the attorney fee is not also limited, the attorney would receive a double fee for the moneys he has secured for his client. Accordingly, we reject the worker's argument.
OPINION OF SEPTEMBER 3, 1999, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; RULE 39(k) MOTION DENIED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Robertson, P.J., and Yates, Monroe, and Thompson, JJ., concur.