MOORE, Judge.
This court’s opinion of November 18, 2011, is withdrawn, and the following is substituted therefor.
Mary Jane Downing appeals from a judgment entered by the Montgomery Circuit Court (“the trial court”) granting a motion for a summary judgment filed by Halcyon Oaks Homeowners Association, Inc. (“the association”), and Jewel Green; granting a motion to dismiss filed by J. Knox Argo, Nicholas Hughes, and J. Knox Argo, P.C.; and denying a motion for a partial summary judgment filed by Downing.

Procedural History

On March 30, 2010, Downing filed in the trial court a petition for a writ of mandamus and a complaint against the association and Green, in her individual capacity and as president of the association. Downing alleged that the association and Green had failed to allow her to inspect the corporate records of the association and requested that the trial court require the association and Green to allow her to access those records. Downing also alleged that the association and Green had breached their fiduciary duty to her by failing to allow her access to the corporate records. Downing further alleged that Green and the association had slandered the title to her property by filing a notice of “lis pendens falsely accusing her] of not paying assessments charged against the [Downing] property.” Finally, Downing alleged that Green and the association had maliciously prosecuted an action “alleging that Downing had failed to pay assessments imposed by [the association].”
On May 11, 2010, the association and Green filed a motion to dismiss or, in the alternative, for a summary judgment. On February 4, 2011, Downing filed an amended complaint. In her amended complaint, Downing asserted the same claims she had asserted in her original complaint and added Argo, Hughes, and J. Knox Argo, P.C., as defendants with regard to the slander-of-title and malicious-prosecution claims. Downing also includ *821 ed a fraud claim against Hughes based on his alleged fraudulent misrepresentation that the association’s dues had been properly increased. Downing asserted that J. Knox Argo, P.C., and the association were vicariously liable for Hughes’s fraudulent misrepresentation. Finally, Downing also asserted a request for a declaratory judgment on the issue whether the dues had been properly increased.
The association and Green again moved for a summary judgment, and Hughes, Argo, and J. Knox Argo, P.C., moved for a dismissal. Downing moved for a partial summary judgment on her request for a declaratory judgment. The association and Green responded to Downing’s motion and attached evidentiary materials in support of their response. Downing then moved to strike certain evidence submitted by the association and Green in support of their response to her motion for a partial summary judgment. On March 9, 2011, the trial court entered a judgment granting the association and Green’s motion for a summary judgment; granting the motion to dismiss filed by Hughes, Argo, and J. Knox Argo, P.C.; and denying Downing’s motion for a partial summary judgment and her motion to strike. On March 31, 2011, Downing filed her notice of appeal to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7.

Facts

Green is the president of the association. Green testified in her deposition that the association was formed in 1989. She testified that the Halcyon Oaks subdivision is composed of garden homes and town-homes. According to Green, the annual assessment fee for all homeowners in the subdivision was originally set at $25 and townhome owners paid additional monthly dues for their parking. She testified that, at some point, the annual assessment fee was increased to $50 for only- garden-home owners.
Green testified that she had been told that, in 2002, the townhome owners got together and decided that they wanted to pay an annual assessment fee of $50 per year instead of the additional monthly dues they were paying for parking and that the association had agreed and had increased the townhome owners’ annual assessment fee to $50. She testified that she was not present for that discussion and that there were no corporate records showing the increase. She later stated, however, that all the homeowners were sent a letter regarding paying an annual assessment fee of $50 and that the town-home owners were supposed to pay an annual assessment fee of $50 according to the association’s bylaws and the minutes of a meeting of the association’s officers.
Downing purchased a townhome in the Halcyon Oaks subdivision in or around 1990. By purchasing the property, she automatically became a member of the association. Downing paid an annual assessment fee of $25 each year and did not increase her payment to $50. On June 8, 2009, Downing received a notice from Green informing her that she owed the association the amount of $25 per year from 2005 through 2009 plus a $100 fine. On July 24, 2009, Downing received a letter from Argo, who is an attorney with J. Knox Argo, P.C., on behalf of the association; that letter stated that Downing owed the association the total amount of $444.98, which included past-due fees, interest, and attorney fees, and that a lawsuit would be filed if she did not pay the amount owed by August 3, 2009.
On August 17, 2009, the association filed in the Montgomery Circuit Court a complaint against Downing and five other members of the association seeking past-due assessment fees, along with late fees, *822 interest, attorney fees, and costs; that case was styled Halcyon Oaks Homeowners Association, Inc. v. Mary Jane Downing et al. and was assigned case no. CV-09-900966. In September 2009, Downing contacted Argo and scheduled an appointment to meet with him to discuss the case. At the meeting, Hughes, who is also an attorney with J. Knox Argo, P.C., presented a settlement agreement to Downing, which she refused to sign. According to Downing, Hughes had stated that she owed $1,144.98 to the association and that, if she did not pay that amount, her property would be seized and sold to satisfy the indebtedness owed to the association. On October 19, 2009, the association filed a notice of lis pendens against Downing’s property in the Montgomery County Probate Court.
Downing testified in her affidavit that, on November 2, 2009, she sent a letter to Green requesting access to certain records of the association. According to Downing, she received no reply from Green, so she submitted a second request on December 3, 2009. According to Downing, Green did not respond to that letter either. Downing’s attorney testified in his affidavit that, on January 18, 2010, he submitted a request to Hughes for access to the corporate records identified in Downing’s November 2, 2009, request. He testified that he had several follow-up communications with Hughes regarding that request.
On January 18, 2010, Downing answered the association’s complaint in case no. CV-09-900966, but she did not file a counterclaim. Downing testified in her affidavit that she had made payments to the association until she had fully-paid the amount the association claimed she owed in case no. CV-09-900966. Downing’s attorney sent an e-mail to Hughes on January 18, 2010, stating: “[W]e understand that your cashing of the check represents ‘final payment’ insofar as the annual assessments up to 2009 are concerned.” On January 22, 2010, Downing’s attorney sent another email to Hughes, which stated: “I would also appreciate you advising as to whether you intend on continuing to pursue the pending claim(s) against my client, despite the fact that she has paid the amount claimed by your client.” Hughes responded by stating that the association might have an additional claim against Downing. Downing’s attorney replied, stating:
“[I]t is my understanding that all sums claimed by your client in the pending action have been satisfied. Whether your client may or may not have ‘new claims’ has no bearing on the claim(s) asserted in the pending matter. Thus, the continued pursuit of this action is without substantial justification. Accordingly, unless this action is dismissed by the close of business on January 26, 2010, I shall have no recourse but to seek sanctions under the Alabama Litigation Accountability Act.”
That same day, Hughes responded, stating: “With your permission, I will cash the check and file a motion to dismiss.” On January 25, 2010, the association filed a motion to dismiss the claims against Downing in case no. CV-09-900966, stating: “Now comes the [association] and shows unto the Court that it has resolved the issues as against ... Downing. [The association] therefore requests a voluntary dismissal as to ... Downing only and shows unto the Court that Counsel for ... Downing has agreed to this motion.” That motion was granted on January 27, 2010.
On February 3, 2010, the association produced certain corporate records of the association to Downing; however, the specific records that had been requested by Downing were not produced. Downing’s attorney testified that he sent Hughes two e-mails addressing the deficiency in the *823 production and that Hughes had advised him that further correspondence should be directed to Argo. Downing’s attorney testified that, on February 16, 2010, he sent an e-mail to Argo regarding the issue of the production of the corporate records. At Argo’s request, Downing’s attorney forwarded Downing’s letters of November 2, 2009, and December 3, 2009, to Argo.
On May 13, 2010, Argo sent Downing’s attorney an e-mail in which he stated, in part: “If there is something else which you contend should be furnished to establish the dues, please state such with specificity.” Downing’s attorney responded to that e-mail, listing the documents that were being requested. Downing and Hughes testified that, although some of the requested records were produced on February 3, 2010, Downing has not been allowed access to all the documents requested in her letters of November 2, 2009, and December 3, 2009.
On November 1, 2010, Downing’s attorney sent Hughes an e-mail inquiring whether the notice of lis pendens against Downing’s property would be removed. On December 14, 2010, Downing’s attorney sent Hughes and Argo an e-mail demanding the removal of the notice of lis pen-dens. The notice of lis pendens was not removed until February 9, 2011. Downing testified that she had not been aware at the time she filed her answer in case no. CV-09-900966 that the notice of lis pen-dens had been filed against her property.
Downing testified that she had believed the representations of Hughes and the association that she owed the association $1,144.98. She testified that, when the corporate records were produced on February 3, 2010, she discovered that case no. CV-09-900966 and the notice of lis pen-dens had been filed without merit. Downing testified in her deposition that she had telephoned Wells Fargo a month before her deposition to inquire about refinancing her home loan, but, she said, she was told that she could not refinance the loan because there was a “lien or something” against her house.[1] She testified that refinancing her loan could have saved her a lot of money because her interest rate was 6% and she was hoping to refinance at a lower interest rate of 4.5%. Downing testified that, due to the association’s refusal to produce the corporate records, she had had to file a lawsuit and to pay attorneys fee’s and had been caused emotional suffering. Downing testified in a second affidavit that Green had made her dislike of Downing known and that she had appeared intent on trying to destroy Downing at any cost.

Discussion

I.
On appeal, Downing first argues that the trial court erred in entering a summary judgment in favor of the association and Green.
“ ‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evi *824 dence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of ■ such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
“Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).”
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala.2006).
We first address Downing’s claim of malicious prosecution against Green and the association. The association and Green assert that summary judgment was appropriate on that claim because case no. CV-09-900966 was not terminated in Downing’s favor.
“In order for a claim of malicious prosecution to be submitted to a jury, the trial court must determine that the plaintiff has presented substantial' evidence of the following elements: (1) that the present defendant instituted a prior judicial proceeding against the present plaintiff; (2) that in instituting the prior proceeding the present defendant acted without probable cause and with malice; (3) that the prior proceeding ended in favor of the present plaintiff; and (4) that the present plaintiff was damaged as a result of the prior proceeding.”
Wal-Mart Stores, Inc. v. Goodman, 789 So.2d 166, 174 (Ala.2000). In Evans v. Alabama Professional Health Consultants, Inc., 474 So.2d 86, 88 (Ala.1985), our supreme court held that a stipulation of dismissal filed in a case was “in the nature of a settlement agreement, compromising the interests of both parties, but ‘in favor’ of neither party.” The court concluded that, because the prior action in which a stipulation of dismissal had been filed had not been terminated in favor of the malicious-prosecution plaintiff, the malicious-prosecution claim could not be maintained. Id.
In the present case, the undisputed evidence indicates that Downing paid the amount the association was claiming she owed in case no. CV-09-900966, that Downing’s attorney then requested that the case be dismissed, and that the association thereafter filed a motion to dismiss the case, specifically noting that Downing had agreed to the filing of that motion. On application for rehearing, Downing argues that, because the stipulation of dismissal was not signed by her and was procured by fraud, her malicious-prosecution claim should be allowed to go forward. She notes that, in Evans, the supreme court specifically held that a stipulation signed by all the parties was in the nature of a settlement agreement. We note, however, that, in the present case, the attorney for the association indicated on the stipulation of dismissal that Downing agreed with it, and evidence was introduced indicating that Downing had paid the amount that the association had requested and had then requested that the association dismiss the case. Thus, there is sufficient evidence of Downing’s assent to the stipulation of dismissal. Just like in Evans, we cannot hold that case no. CV-09-900966 was terminated in favor of Downing because it is undisputed that the association dismissed the action only after *825 Downing had paid the full amount claimed in the lawsuit and had requested a dismissal. Thus, we conclude that summary judgment in favor of the association and Green was appropriate on Downing’s malicious-prosecution claim.
The association and Green assert that Downing’s remaining claims against them — slander of title, breach of fiduciary duty, a request for a writ of mandamus requiring the association to produce corporate records, and a request for a declaratory judgment — are barred by the compulsory-counterclaim rule.
“‘Rule 13(a), [Ala.] R. Civ. P., provides, in pertinent part, as follows:
“ ‘ “(a) Compulsory counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party’s claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.... ”
“ ‘The following are pertinent Committee Comments to that subsection:
“ ‘ “The purpose of this provision is to avoid circuity of actions, and to require assertion as counterclaims of those claims which are likely to turn on the same facts as the original claim. A counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim.... ”
“‘(Citations omitted.) (Emphasis added.) We have consistently applied the “logical relationship” test suggested in the aforementioned Committee Comments to determine what is and what is not a compulsory counterclaim. See Ex parte Canal Insurance Co., 534 So.2d 582 (Ala.1988), and Brooks v. Peoples National Bank of Huntsville, 414 So.2d 917 (Ala.1982); see, also, O’Donohue v. Citizens Bank, 350 So.2d 1049 (Ala.Civ.App.1977).
“““[Claims are logically related] to the opposing party’s claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counter-claimant be permitted to maintain his cause of action. Indeed the doctrine of res judicata compels the counter-claimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.” ’
“ ‘Mississippi Valley Title Ins. Co. v. Hardy, 541 So.2d 1057, 1059-60 (Ala.1989) (citations omitted) (quoting Desroches v. Ryder Truck Rental, Inc., 429 So.2d 1010, 1012 (Ala.1983), quoting an earlier case).
“ “While we have not defined the terms “transaction” or “occurrence” in Rule 13(a), the Missouri Supreme Court has defined “transaction” in its Rule 55.32(a), V.A.M.R., which is identical to Rule 13(a), in Myers v. Clayco State Bank, 687 S.W.2d 256, 260-61 (Mo.App.1985), quoting Cantrell v. City of Caruthersville, 359 Mo. 282, 221 S.W.2d 471 (1949), as follows:
“ ‘ “Transaction imports a pliable meaning and may encompass a series of occurrences, and depends in application, not so much upon the immediacy of connection, as upon logical relationship. Claim [of either the original pleader or of the counterpleader] re *826 fers not to the form of the action, but ‘to the underlying facts combined with the law giving a party .a right to a remedy of one form or another based on the claim.’ Subject matter of the claim does not equate merely with the cause of action, , nor the object of the action, but rather ... describes the composite of ‘physical facts, the things real or personal, the money, lands, chattels, and the like, in relation to which the suit is prosecuted.’ Thus, the term transaction extends to include ... ‘all of the facts and circumstances which constitute the foundation of a claim ... “all the facts and circumstances out of which the injury complained of arose.” ’ ”
“ ‘(Citations omitted.) (Emphasis in Myers.) This definition is consistent with our logical relationship test and the purpose of Rule 13(a) (“[t]he rule on compulsory counterclaims should receive a ‘broad realistic interpretation in light of the interest of avoiding a multiplicity of suits,” ’ Mississippi Valley Title Ins. Co. v. Hardy, 541 So.2d at 1060).’ ”
Owens v. Owens, 31 So.3d 722, 726-27 (Ala.Civ.App.2009) (quoting JJ’s Heating & Air Conditioning, Inc. v. Gobble-Fite Lumber Co., 572 So.2d 1243, 1244-45 (Ala.1990)).
Downing’s claims of breach of fiduciary duty and for mandamus relief arose from the association and Green’s alleged failure to produce corporate records in support of the association’s claim for past-due assessment fees, which served as the basis of the claims asserted by the association against Downing in case no. CV-09-900966. Downing’s slander-of-title claim arose from the filing of the notice of lis pendens against Downing’s property in connection with case no. CV-09-900966. Downing’s request for a declaratory judgment involved the merits of the association’s claims against Downing in case no. CV-09-900966. We conclude that all of those claims have a logical relationship with the claims for past-due assessment fees asserted by the association against Downing in case no. CV-09-900966. Because Downing’s claims are logically related to the claims asserted by the association in case no. CV-09-900966, they arise from the same transaction for purposes of Rule 13(a). Owens, supra.
In response to the association and Green’s argument that her remaining claims against them are barred by the compulsory-counterclaim rule, Downing argues that, because she was not aware of her slander-of-title claim at the time she filed her answer in case no. CV-09-900066, the compulsory-counterclaim rule is not applicable to that claim. In support of her argument, Downing cites Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Construction Co., 466 So.2d 83, 90 (Ala.1985), in which our supreme court held: “Rule 13(a)[, Ala. R. Civ. P.,] cannot be construed to require a party to file as a compulsory counterclaim a claim which it does not know it has.” Downing testified in her affidavit that she was not aware that the association had filed a notice of lis pendens as to her property or that the association’s claims were improper until after she had filed .her answer in case no. CV-09-900966. We construe Sho-Me as requiring actual knowledge of a claim; thus, the mere filing of the notice of lis pendens, which would have given Downing constructive notice of her claim, would not be sufficient. 466 So.2d at 90. Accordingly, we conclude that her slander-of-title claim against the association and Green is not barred by the compulsory-counterclaim rule.[2]
*827 The association and Green also argue that summary judgment was appropriate on Downing’s slander-of-title claim because no malice or damages were proved. See Harrison v. Mitchell, 391 So.2d 1038, 1041 (Ala.Civ.App.1980) (“To recover for slander of title to realty a plaintiff must establish: (1) his ownership of the property slandered; (2) publication by the defendant of a false statement concerning his title; (3) malice by the defendant in publishing his statement; (4) publication of the statement to someone other than the plaintiff; (5) publication of the statement by the defendant in disparagement of plaintiffs property or his title thereto; and (6) special damages proximately caused by the publication of the statement.”). As Downing argues, however, there are genuine issues of material fact as to both of those elements. To show malice, Downing must prove that the association and Green intentionally or recklessly disparaged the title to her property. See, e.g., Dabbs v. Four Tees, Inc., 36 So.3d 542, 558 (Ala.Civ.App.2008). Downing points out that, based on Green’s deposition testimony that the annual assessment fee was increased as a result of an informal agreement among the townhome owners, there is an issue of fact as to whether the fees were properly increased and, if they were not, whether the association and Green had knowledge that the fees were not properly increased. If that issue of fact were to be resolved in favor of Downing, there would be sufficient proof that the association and Green intentionally or recklessly disparaged Downing’s property because there would have been no proper basis for the filing of the association’s lawsuit or the notice of lis pendens. With regard to the damages element, Downing testified in her affidavit that she had been prevented from refinancing her home loan at a lower interest rate because of the presence of the notice of lis pendens that was filed against her property. Accordingly, we conclude that a genuine issue of material fact exists with regard to the elements of the slander-of-title claim.
Based on the foregoing, we conclude that the trial court erred in entering a summary judgment on Downing’s slander-of-title claim against Green and the association. We also conclude that the trial court correctly entered a summary judgment on the remaining claims asserted by Downing against Green and the association.
II.
Downing next argues that the trial court erred in granting the motion to dismiss filed by Hughes, Argo, and J. Knox Argo, P.C., with regard to her claims of slander of title, malicious prosecution, and fraud.
“The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App.1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala.1984). We note that a Rule 12(b)(6) *828 dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).”
Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993). “A ruling on a motion to dismiss is reviewed without a presumption of correctness.” Newman v. Savas, 878 So.2d 1147,1148-49 (Ala.2003).
We initially note that Hughes, Argo, and J. Knox Argo, P.C., argued in their motion to dismiss that Downing’s claims were barred by, among other things, the defenses of estoppel, res judica-ta, accord and satisfaction, and waiver. Downing has failed to present an argument in her brief to this court with supporting authority on each of those defenses. “When an appellant confronts an issue below that the appellee contends warrants a judgment in its favor and the trial court’s order does not specify a basis for its ruling, the omission of any argument on appeal as to that issue in the appellant’s principal brief constitutes a waiver with respect to the issue.” Fogarty v. Southworth, 953 So.2d 1225,1232 (Ala.2006); see also City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998) (‘When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research.”). Thus, we conclude that Downing has waived her arguments with respect to the propriety of the dismissal of her claims against Knox, Hughes, and J. Knox Argo, P.C.
III.
Downing’s final argument is that the trial court erred in denying her motion for a partial summary judgment on her request for a declaratory judgment and that the trial court erred in denying her motion to strike certain evidence offered by the association regarding the merits of that claim.[3] As noted previously, however, Downing’s request for a declaratory judgment was barred by the compulsory-counterclaim rule as a matter of law. Thus, the trial court did not err in denying her motion for a partial summary judgment on that claim. Further, any error with regard to the denial of her motion to strike is harmless because we do not reach the merits of Downing’s argument with regard to the declaratory-judgment claim. Rule 45, Ala. R.App. P.

Conclusion

Based on the foregoing, we reverse the summary judgment on Downing’s claim of slander of title against the association and Green, we affirm the judgment in all other respects, and we remand the cause for further proceedings.
APPLICATION GRANTED; OPINION OF NOVEMBER 18, 2011, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. The present action was filed two months after Downing filed her answer in case no. CV-09-900966. Based on this time line, it is clear that this telephone call was not placed until after her answer was filed in that action.
Although a notice of lis pendens is not a "lien,” for purposes of determining whether the summary judgment was proper, we assume that Wells Fargo was referring to the notice of lis pendens.

. We note that Downing makes this argument with regard to only the slander-of-title claim.
*827 Thus, we will not address whether she had knowledge of her other claims at the time she filed her answer in case no. CV-09-900966. "An argument not made on appeal is abandoned or waived.” Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1124 n. 8 (Ala.2003).

. As Downing argued in her application for rehearing, Lloyd Noland Foundation, Inc. v. City of Fairfield Healthcare Authority, 837 So.2d 253, 263 (Ala.2002), states that an "appeal from a pretrial final judgment disposing of all claims in the case (as distinguished from a Rule 54(b)[, Ala. R. Civ. P.,] summary judgment disposing of fewer than all claims) entitles the [appellant], for purposes of our review, to raise issues based upon the trial court’s adverse rulings, including the denial of its summary-judgment motions."