On Applications for Rehearing

MOORE, Judge.
This court’s opinion of July 18, 2014, is withdrawn, and the following is substituted therefor.
Arthur Barney appeals from a summary judgment entered by the Montgomery Circuit Court (“the trial court”) in favor of Elizabeth Bell, as personal representative of the estate of Maurice Bell, deceased, and William Clay Teague on Barney’s legal-malpractice claim.

Background

The record establishes the following pertinent facts. On July 15, 2010, Barney was injured in an automobile accident arising out of and in the course of his employment with the Lowndes County Commission (“the employer”). Barney retained Maurice Bell and William Clay Teague to represent him in regard to both a claim against the employer for workers’ compensation benefits[1] and a claim against the third party allegedly responsible for the automobile accident. In connection with the third-party action, Barney agreed to a 50% contingency-fee arrangement.
Barney entered into a compromise settlement of his workers’ compensation claim with Meadowbrook Insurance Group (“Meadowbrook”), the third-party claims *851 administrator responsible for handling the employer’s workers’ compensation insurance claims. In that settlement, Meadow-brook agreed to pay, among other things, a lump-sum amount of $42,500 to Barney. Pursuant to the terms of that settlement, Bell and Teague received 15% of the lump-sum amount, i.e., $6,375, as their fee for handling the workers’ compensation claim on behalf of Barney. Meadowbrook reserved its right to reimbursement in the amount of $65,032.09 from any recovery obtained in Barney’s third-party action. The trial court approved the terms of that settlement, including the 15% attorney-fee award, on May 20, 2011.
In January 2012, State Farm Mutual Automobile Insurance Company, the insurer for the third party involved in the automobile accident with Barney, agreed to pay a lump sum of $45,000 to settle Barney’s third-party action. It is undisputed that, on January 9, 2012, Bell and Teague retained 50% of the $45,000, i.e., $22,500, and that they forwarded the remaining $22,500 to Meadowbrook in satisfaction of Meadowbrook’s right to reimbursement in the third-party action.
On November 2, 2012, Barney filed a complaint against Bell[2] and Teague alleging legal malpractice pursuant to the Alabama Legal Services Liability Act (“the ALSLA”), Ala.Code 1975, § 6-5-570 et seq. Barney alleged that Bell and Teague had failed to inform Barney that he was owed additional funds, that Bell and Teag-ue had retained for their own benefit funds to which Barney was entitled, and that Bell and Teague had charged Barney excessive attorney’s fees. More specifically, Barney asserted that Meadowbrook had agreed to reduce its subrogation interest in the third-party action to $22,500 and that, therefore, Bell and Teague were enti-tied to only $11,250 pursuant to their 50% contingency-fee agreement. Barney also asserted that, even if Meadowbrook had not agreed to reduce its subrogation interest in the third-party action, Bell and Teague were not entitled to retain the $6,375 that had been awarded to them as attorney’s fees in the workers’ compensation settlement.
Bell and Teague moved for a summary judgment, attaching an affidavit from Kathy McClamroch, the claims adjuster for Meadowbrook who had handled Barney’s claim. The trial court denied that motion. Thereafter, the parties deposed MeClam-roch, who testified that Meadowbrook had agreed to accept $22,500 of the $45,000 third-party recovery in satisfaction of its statutory credit and subrogation rights, taking into account that Barney had agreed to pay Bell and Teague a 50% attorney’s fee. McClamroch testified that Meadowbrook had maintained its rights.to the entire third-party recovery, but she acknowledged that, based on the contingency-fee arrangement, Bell and Teague were owed 50% of the $45,000 recovery as attorney’s fees, thus entitling it to only $22,500. Teague also testified in his deposition that he had made an oral agreement with McClamroch to pay Meadowbrook $22,500 to satisfy its claim to the third-party recovery.
On June 27, 2013, Barney filed a motion for a partial summary judgment “as to liability and partial damages.” In support of that motion, Barney attached requests for admissions he had sent to Teague on May 20, 2013, but to which Teague had not yet responded. In those requests for admissions, Barney asked Teague to admit that Meadowbrook had agreed to accept the sum of $22,500 “in full and final settlement of its workers’ compensation *852 subrogation interest” and that Teague had remitted $22,500 to Meadowbrook in accordance with that agreement. Barney also attached excerpts from the depositions of McClamroch and Teague relating to the settlement of Meadowbrook’s claim against the third-party recovery and an affidavit from attorney Thomas Slate McDorman.
Bell and Teague subsequently filed a second motion for a summary judgment. In support of that motion and in opposition to Barney’s motion for a partial summary judgment, Bell and Teague submitted additional excerpts from McClamroch’s deposition. Barney moved to strike the excerpts from McClamroch’s deposition that Bell and Teague had submitted in support of their motion and in opposition to his motion. The trial court denied that motion on July 16, 2013. Two days later, Barney filed his opposition to Bell and Teague’s second summary-judgment motion and again moved to strike the excerpts from McClamroch’s deposition submitted in support of Bell and Teague’s second summary-judgment motion and in opposition to his partial-summary-judgment motion. On July 19, 2013, the trial court denied Barney’s second motion to strike. The trial court also granted -Bell and Teague’s summary-judgment motion, stating that the dispositive issue was whether Meadow-brook had agreed to reduce its subrogation interest. The trial court stated that the evidence before it unequivocally established that Meadowbrook had not agreed to reduce its subrogation interest, and, therefore, it entered a summary judgment in favor of Bell and Teague. Barney timely filed his notice of appeal.

Standard of Review

“Our standard of review for a summary judgment is as follows:
“ ‘We review the trial court’s grant or denial of a summary-judgment motion de novo, and we use the same standard used by the trial court to determine whether the evidence presented to the trial court presents a genuine issue of material fact. Bockman v. WCH, L.L.C., 943 So.2d 789 (Ala.2006). Once the summary-judgment movant shows there is no genuine issue of material fact, the non-movant must then present substantial evidence creating a genuine issue of material fact. Id. “We review the evidence in a light most favorable to the nonmovant.” 943 So.2d at 795. We review questions of law de novo. Davis v. Hanson Aggregates Southeast, Inc., 952 So.2d 330 (Ala.2006).’ ”
Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So.2d 784, 793 (Ala.2007) (quoting Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342, 346 (Ala.2006)).

Analysis

Barney initially argues that the trial court erred in granting Bell and Teague’s motion for a summary judgment as to his claim that they had retained excessive attorney’s fees in relation to the third-party recovery. Barney argues that the trial court should have granted his motion to strike the excerpts from McClamroch’s deposition and should have determined that Meadowbrook had agreed to accept $22,500 in accord and satisfaction of its claim against the third-party recovery, thus entitling Bell and Teague to only $11,250 in attorney’s fees.
In support of his motions to strike, Barney noted that he had filed certain requests for admissions to Teague to which Teague had failed to timely respond.[3] *853 Those requests essentially asked Teague to admit that Meadowbrook had agreed to accept $22,500 in full satisfaction of its claim against the third-party recovery and that Teague had sent Meadowbrook a check in the amount of $22,500 in accordance with that agreement. Under Rule 36(a), Ala. R. Civ. P., a matter subject to a request for admission generally is deemed admitted if no timely response is made. Barney argues that the trial court should have struck the excerpts from McClam-roch’s deposition submitted by Bell and Teague in support of their summary-judgment motion and in opposition to his partial-summary-judgment motion because, he says, those excerpts contradicted Teague’s deemed admission that Meadowbrook had reduced its claim against the third-party recovery.
Assuming that the trial court determined that Teague had admitted the matters set forth in the requests for admissions, see Bradley v. Demos, 599 So.2d 1148 (Ala.1992); Green Tree Acceptance, Inc. v. Doan, 529 So.2d 201 (Ala.1988); and Hatton v. Chem-Haulers, Inc., 393 So.2d 950 (Ala.1981) (all holding that any relief to be afforded from the consequences of tardy responses to requests for admissions lies within the trial court’s discretion), we find no error in the trial court’s decision to deny the motions to strike. In her deposition, McClamroch did not contradict Teague’s deemed admissions. She confirmed that Meadowbrook had accepted $22,500 in satisfaction of its claim to the third-party recovery. McClamroch further explained that Mea-dowbrook had accepted that amount by taking into account its right to a full recovery of the $45,000 third-party recovery, less the 50% contingency fee to which Barney had agreed. Thus, the application of Rule 36 did not require the trial court to strike the deposition excerpts submitted by Bell and Teague.
Barney next argues that the undisputed evidence shows that Meadowbrook agreed to reduce its claim to the third-party recovery to $22,500. To reach that conclusion, however, Barney relies on only Teague’s allegedly deemed admissions and portions of McClamroch’s deposition. As previously discussed, those materials do not support Barney’s assertion. Although McClamroch acknowledged that Meadow-brook had accepted $22,500 as a full settlement of its subrogation interest in the third-party action, she also testified: “[W]e didn’t per se reduce our subrogation. It was just, you know, after taking [their] fee, after keeping that in mind, you know, 50 percent of 45 is 22,500; right?” Reading McClamroch’s testimony in context reveals that Meadowbrook did not agree to reduce its subrogation interest in the third-party action but, rather, agreed to pay the proportionate share of attorney’s fees on the full $45,000 recovery, thereby netting a recovery of $22,500 on its claim. See McGough v. G & A, Inc., 999 So.2d 898, 905-06 (Ala.Civ.App.2007) (“When reviewing an excerpt of deposition testimony to determine whether it creates a genuine issue of material fact, this court does not consider it abstractly, independently, and separately from the balance of the deposition testimony.... Rather, this court must consider the context of the testimony as well as the remainder of the deposition testimony in order to determine if the testimony as a whole creates a reasonable inference to support the proponent’s position.”). Thus, the trial court did not err in finding that Meadowbrook had not agreed to reduce its claim to the third-party recovery by accepting $22,500 as an accord and satisfaction. See Ex parte Meztista, 845 So.2d 795, 797 (Ala.2001) *854 (quoting Leisure American Resorts v. Carbine Constr. Co., 577 So.2d 409, 411 (Ala.1990)) (“ ‘An accord and satisfaction is an agreement reached between competent parties regarding payment of a debt the amount of which is in dispute.’ ”).
Based on the foregoing evidence, Bell and Teague were entitled to a summary judgment as to Barney’s claim that they had retained excessive attorney’s fees from the third-party recovery. Section 25-5-11(e), Ala.Code 1975, a part of the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975, provides, in pertinent part:
“In a settlement made under this section with a third party by the employee or, in case of death, by his or her dependents, the employer shall be liable for that part of the attorney’s fees incurred in the settlement with the third party, -with or without a civil action, in the same proportion that the amount of the reduction in the employer’s liability to pay compensation bears to the total recovery-had from the third party.”
In Fitch v. Insurance Co. of North America, 408 So.2d 1017, 1019 (Ala.Civ.App.1981), this court construed § 25-5-ll(e) to require employers to pay attorney’s fees in accordance with the following formula:
[[Image here]]
Applying that formula to the present case, because the receipt of the entire proceeds of the third-party settlement reduced Mea-dowbrook’s liability by $45,000, it was required to pay Bell and Teague attorney’s fees of $22,500 based on the 50% contingency-fee agreement they had made with Barney. Hence, Bell and Teague did not commit malpractice by retaining the $22,500 fee, and they were entitled to judgment as a matter of law in their favor on that claim.
Barney asserts that, even if Bell and Teague did not commit malpractice in retaining the $22,500 fee, they did breach a standard of care by failing to remit to him the $6,375 in fees awarded to them in the workers’ compensation settlement. We first consider whether that claim arises under the ALSLA.
In Ex parte Free, 910 So.2d 753 (Ala.2005), Dorothy Free hired Alan B. Las-seter of Church, Seay & Minor, P.C., to represent her in a workers’ compensation action. Lasseter obtained for Free a judgment with a present value of $448,918.58, but later settled the case for
$195,000 while the judgment was on appeal. Lasseter and the firm retained a fee of $67,337.79, which amount represented 15% of the original award. Free sued Lasseter and the firm alleging fraud, conversion, negligence, and wantonness and sought a judgment declaring that the fee retained by Lasseter and the firm violated Ala.Code 1975, § 25-5-90. Section 25-5-90(a) provides that any fee collected in a workers’ compensation case “shall not exceed 15 percent of the compensation awarded or paid.” After the trial court had dismissed the complaint and this court had affirmed the dismissal without an opinion, our supreme court granted a petition for a writ of certiorari, concluding that Free’s complaint stated a claim under the ALSLA. 910 So.2d at 756.
Later, in Free v. Lasseter, 31 So.3d 85 (Ala.2009), after the trial court had entered a summary judgment in favor of Lasseter and the firm, our supreme court explicated its holding in Ex parte Free. The supreme court explained that the ALSLA provides for “ ‘only one ... cause of action against legal service providers in courts in the *855 State of Alabama, and it [is] known as the legal service liability action.’ ” 31 So.3d at 88 (quoting Ala.Code 1975, § 6-5-573); see also Ala.Code 1975, § 6-5-572(1) (providing that a “legal service liability action” includes “any form of action in which a litigant may seek legal redress for a wrong or an injury”). That sole cause of action rests entirely on “[t]he failure by a legal service provider to comply with the applicable standard of care the breach of which proximately causes the injury or damages,” Ala.Code 1975, § 6-5-572(4), with the “standard of care” being defined as “that level of such reasonable care, skill, and diligence as other similarly situated legal service providers in the same general line of practice in the same general locality ordinarily have and exercise in a like case.” Ala.Code 1975, § 6-5-572(3)a. The supreme court held in Lasseter that, regardless of the fact that Free had initially brought her claims under common-law theories of recovery, the claims had to be recast into an ALSLA action. 31 So.3d at 89.
The foregoing cases clearly hold that a claim against an attorney for allegedly retaining excessive fees arises under the ALSLA. We note that Rule 1.5(a), Ala. R. Prof. Cond., provides that “[a] lawyer shall not enter into an agreement for, or charge, or collect a clearly excessive fee.” An attorney who violates that rule commits professional misconduct, Rule 8.4(a), Ala. R. Prof. Cond., and may be disciplined by the Alabama State Bar for that misconduct. See Rule 2(b), Ala. R. Disc. P. However, nothing in the Rules of Professional Conduct provide that a client aggrieved by an alleged excessive fee may not alternatively seek legal redress for any injury and damage caused thereby. In Lasseter, the supreme court specifically noted that, in the ALSLA action, “the disputed fee will form the nucleus of [Free’s] damages award.” 31 So.3d at 89. Thus, we reject any argument that Barney could not maintain a viable claim under the ALSLA to recover the fees Bell and Teag-ue had allegedly wrongfully retained.
The next question concerns whether Bell and Teague breached the applicable standard of care. Bell and Teague argue that whether they were required to reimburse Barney $6,375 should be considered a question of law regarding the interplay between § 25-5-90 and § 25-5-ll(e). Our supreme court addressed a similar contention in Lasseter, supra. The trial court in that case entered a declaratory judgment awarding Free $53,312.79 on the ground that § 25-5-90 allowed Lasseter and the firm to collect only 15% of the amount of the postjudgment settlement, and not 15% of the original award. The supreme court determined, however, that the trial court could not decide the propriety of the fees by construing § 25-5-90 itself but, rather, had to decide the issue based on evidence as to the standard of care as required by the ALSLA. 31 So.3d at 89-90. Although Free maintained, in part, that Lasseter and the firm had charged her an unlawful fee, the supreme court held that the question under the ALSLA was solely whether the fee charged violated the standard of care. Id. Applying the holding in Lasseter to this case, we conclude that the crux of Barney’s action concerns the factual question of whether Bell and Teague breached the standard of care.
In actions under the ALSLA, a party must present expert testimony to establish the standard of care unless that standard is within common knowledge. Valentine v. Watters, 896 So.2d 385, 393 (Ala.2004). Bell and Teague did not, however, present any expert testimony as to the standard of care or the propriety of their conduct in keeping the $6,375 fee. In failing to present any evidence on those points, Bell and Teague did not make a *856 prima facie showing that they were entitled to a summary judgment. The trial court thus erred in entering a summary judgment in favor of Bell and Teague on that claim. See Lasseter, 31 So.3d at 90 (reversing a summary judgment for defendants because they “presented no argument or evidence as to the dispositive issue of the standard of care under § 6-5-572(3)a. or the breach of .that standard under § 6-5-572(4)”).
We next turn to Barney’s argument that the trial court should have granted his motion for a partial summary judgment as to his claim based on the alleged wrongful retention of the $6,375 fee. An “appeal from a pretrial final judgment disposing of all claims in the case ... entitles [the appellant], for purposes of our review, to raise issues based upon the trial court’s adverse rulings, including the denial of [the appellant’s] summary-judgment motions.” Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth., 837 So.2d 253, 263 (Ala.2002); see also Downing v. Halcyon Oaks Homeowners Ass’n, 96 So.3d 818, 828 n. 3 (Ala.Civ.App.2012).
In support of his motion, Barney submitted an affidavit of Thomas Slate McDor-man, a licensed attorney, who attested, in. pertinent part:
“Pursuant to § 25-5-ll(a), Code of Alabama (1975), and the holding in Bynum vs. City of Huntsville, 779 So.2d 243 (Ala.Civ.App.1999), [Bell and Teague] were not entitled to retain both the $6,375.00 awarded as attorney’s fees on the workers’ compensation settlement and the 50% contingent fee totaling $22,500 from the State Farm settlement. This constitutes a ‘double fee’ which is expressly forbidden.... Bell and Teag-ue were obligated to remit the $6,375.00 awarded .in the workers’ compensation case as attorney fees to Barney upon finalization of the State Farm settlement. Their failure to do so breached the standard of care.”[4]
Bell and Teague did not offer any evidence to dispute that testimony. To the contrary, upon questioning by Barney’s attorney, Teague testified in his deposition as follows:
“Q: Okay. And you’re not aware that since you recovered $22,500 on the State Farm matter that the workers’ comp[ensation] attorney fee award has to be vacated? You’re not aware of that?
“A: Well, I believe through your motions to vacate, yes, I found that out, but that would mean that Mr. Barney would have to give back his money as well.
“Q: Okay. Let me ask you another question. You talk about my filing. You’re talking about the rule 60 motion that was filed in the workers’ comp[ensation] case?
A: I believe so, yes.
Q: And that’s where you first heard that suggestion?
A: Yes.
Q: Did you go and look into it to determine if it was an accurate assertion or not?
“A: No.
*857 “Q: So you understood the assertion in that filing to be that you cannot keep the attorney fee in the workers’ compensation] case[,] correct? Is that the way you understood it?
“A: Yes, that’s the assertion.
“Q: And after you read that is it your testimony you did nothing to determine whether it’s proper for you to keep those funds or not?
“A: No, I did not. I did not.
“Q: And short of a court ordering you to return that money, you have no intention of returning it, do you?
“A: No, sir.
“Q: And I take it you have no intention of going to look into the issue of whether you should return that money to him[,] is that correct? Because I would assume if you intended to look into it, you would have already done it[,] right?
“A: Yeah.”
The foregoing evidence fails to disclose any genuine issue of material fact as to the standard of care or the breach of the standard of care, the bases for liability under the ALSLA. The record further discloses no factual dispute regarding whether Barney lost $6,375 as a proximate result of the breach of the standard of care. Thus, we agree with Barney that the trial court should have granted his motion for a partial summary judgment as to liability in regard to his ALSLA claim asserting that Bell and Teague had wrongfully retained the fees awarded in the workers’ compensation settlement and that the trial court should have awarded Barney $6,375 in compensatory damages.

Conclusion

For the foregoing reasons, we affirm the summary judgment entered in favor of Bell and Teague insofar as it relates to Barney’s claim that Bell and Teague committed legal malpractice by collecting an excessive attorney’s fee from the third-party settlement. We reverse the summary judgment entered in favor of Bell and Teague on Barney’s claim that they committed legal malpractice by retaining the $6,375 attorney’s fee from the workers’ compensation settlement, and, on remand, we instruct the trial court to enter a partial summary judgment for Barney on that claim, holding that Bell and Teague are liable under the ALSLA and that Barney is entitled to $6,375 in compensatory damages. Furthermore, we remand the case for further proceedings, including the assessment of any further compensatory or punitive damages to which Barney may be entitled.
APPLICATIONS GRANTED; OPINION OF JULY 18, 2014, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
THOMPSON, P.J., recuses himself.

. Barney originally retained a different attorney to represent him in connection with the workers' compensation claim. That attorney died during the pendency of that action, and Barney then retained Bell and Teague to represent him in that action.

. After Barney initiated this legal-malpractice action against Bell and Teague, but during the pendency of this action, Bell died. Elizabeth Bell was substituted as Bell’s personal representative.

. According to his initial motion to strike, Barney had served Teague with the requests for admissions 38 days earlier. Rule 36, Ala. *853 R. Civ. P., ordinarily gives a party 30 days to respond to requests for admission.

. Bell and Teague argue that this court should not consider McDorman's affidavit because it contains inadmissible legal opinions. See Hannah v. Gregg, Bland & Berry, Inc., 840 So.2d 839, 852 (Ala.2002) ("Generally, a witness, whether expert or lay, cannot give an opinion that constitutes a legal conclusion or amounts to the application of a legal definition.”). We need not consider that argument, however, because Bell and Teague did not move the trial court to strike the affidavit. See Ex parte Secretary of Veterans Affairs, 92 So.3d 771, 776-77 (Ala.2012) (holding that, in absence of a motion to strike, court may consider defective affidavit because any objections to that affidavit are considered waived).